[Birmingham Min. R. R. Co v. Tenn. Coal, Iron & R. R. Co. *et al.*]

# Birmingham Mineral Railroad Co. *v.* Tennessee Coal, Iron & Railroad Co. *et al.*

137　137|
135　584

## Action of Trover.

1. *Agency; when agent's authority question for the jury.*—If the fact of agency or the authority of an agent and its extent is not evidenced by a written instrument, but rests in parol and is a matter of dispute, it becomes a question of fact to be determined by the jury from the evidence.

2. *Same; same; admissibility of evidence.*—When in the trial of a case, the agency of a certain person is the subject of inquiry, his acts and declarations become competent for consideration in determining both the fact of agency and the scope of authority originally given, when shown in connection with other evidence of agency; and in such instance, circumstances and transactions which have no direct connection with the issues being tried in the particular case, may be considered when they illustrate the general nature of the business entrusted to the agent.

3. *Same; proof of agency.*—The extent of an agent's authority need not be shown by direct and positive evidence, but may be shown or inferred from the course of dealings pursued by said agent and his principal.

4. *Same; trover; question as to ratification of agent's acts.*—In an action of trover seeking to recover damages for the alleged conversion of cross ties cut from the plaintiffs' lands, where the defendant sets up as a defense that the ties cut from the plaintiffs' lands were paid for to a certain named person representing himself as agent of the plaintiffs, and there was testimony tending to show that said person was employed by the plaintiffs to look after their lands and the timber tnereon, lists them for taxes, and while claiming to act as plaintiffs' agent had leased out several tracts of the land, the rent notes for which had been turned over to the plaintiffs, and he had also collected for timber cut from said lands, the evidence so introduced is sufficient to justify an inference of agency for the plaintiffs; and, therefore, a charge which instructs the jury that payment to said named person for the ties cut from plaintiffs' lands "would not be a pay-

[Birmingham Min. R. R. Co v. Tenn. Coal, Iron & R. R. Co. *et al.*]

ment in the light of his authority without notice to the plaintiffs that he was collecting for them and their ratification of his act," is erroneous.

5. *Same; when general charge erroneous.*—In an action of trover to recover for the alleged conversion of cross ties cut from the plaintiffs' lands, where there is conflict in the evidence as to whether or not the ties cut from the plaintiffs' lands were received by the defendant and had not been paid for by the defendant or its authorized agent, the general affirmative charge requested by the plaintiffs should be refused.

6. *Witness; competency as to transactions with deceased agent.* Before a person is rendered incompetent or is disqualified, under the statute (Code, § 1749) to testify as to statements by or transactions with one acting as agent for the adverse party, and who has died before the trial, it must be shown that said witness had some pecuniary interest in the result of the suit.

7. *Trover for the conversion of timber; measure of damage.*—In an action of trover against an innocent vendee from an unintentional trespasser for the conversion of timber cut from the land of the plaintiff, the value of which, before the purchase, has been enhanced by the labor of the trespasser in preparing and transporting the timber to market, the measure of damages is the value of the timber immediately after severance from the land, with interest thereon up to the time of trial; but when the action is brought against the purchaser from a willful trespasser, though the purchase was made without notice of the wrong, the measure of damages is the value of the property at the time of the purchase.

8. *Agency; proof of general agency.*—Where a corporation engaged in the business of mining and manufacturing iron, employs an agent to look after the lands owned by it, giving him authority over said lands and the timber thereon, and empowers him to lease the same, such authority does not constitute said agent the company's general agent as to all of its business; nor does such employment give to the agent the right to defend the scope of his agency so as to bind his principal without regard as to whether the acts performed by him were otherwise authorized, or were known to and ratified by the principal.

APPEAL from the Circuit Court of Blount.

Tried before the Hon. J. A. BILBRO.

This was an action of trover, brought by the appellee, the Tennessee Coal, Iron & Railroad Company and the

[Birmingham Min. R. R. Co v. Tenn. Coal, Iron & R. R. Co. *et al.*]

Sloss Iron & Steel Company against the Birmingham Mineral Railroad Company, to recover damages for the alleged wrongful conversion of 1,000 cross-ties, which were cut from the land owned by the plaintiffs. The cause was tried upon issue joined upon the plea of the general issue.

On the trial it was shown that the plaintiffs had a legal title to land from which the ties alleged to have been converted by the defendant were cut.

The evidence introduced for the plaintiffs tended to show that several different persons had cut from the lands of the plaintiffs, without the plaintiffs' consent, the trees from which cross ties were made; that the cutting of said trees was done for certain contractors and that these contractors sold the said trees to the defendant.

There was evidence introduced in behalf of the defendant tending to show that at the time the trees from which the cross ties were made were cut from the lands of the plaintiff, one J. W. Bass was the agent of the plaintiffs having the management and control of their lands, and that for the ties which were taken from the plaintiffs' lands, Bass, as agent of the plaintiffs, had been paid, and that at the time of the purchase of said ties by the defendant, it was not known by the defendant that they were cut from the plaintiffs' lands, and that if any of them were not paid for, this fact was unknown to the defendant at the time of purchasing. It was shown that at the time of the trial that J. W. Bass was dead. The other tendencies of the evidence, so far as is necessary to an understanding of the decision on the present appeal, are sufficiently stated in the opinion.

One J. M. Donehoo, a witness for the defendant, testified that he was a merchant in Oneonta, and during the fall of 1895-1896, he was engaged in the cross-tie business, that is, in having ties cut and in selling them. Among other things, this witness testified that he saw a receipt in favor of Pink Algood for money paid for cross ties during the time referred to, and that this receipt was in the handwriting of J. W. Bass, and was signed by said Bass as agent for the plaintiff.

During the examination of one J. D. Algood, a witness for the defendant, he testified that in the fall and winter of 1895, which was the time fixed in the complaint as to when the ties were converted by the defendant, he, the witness, cut several hundred ties from the plaintiffs' lands; that most of these ties were cut for the Champion Mine. In answer to a question propounded him by the defendant's counsel, the witness said that he was present when Bass gave to his brother, Pink Algood, a receipt for money paid to Bass for ties cut from plaintiffs' lands, which was referred to by the witness Donehoo; that said receipt was given for ties cut for the Champion Mine. The plaintiffs objected to this question, the court sustained the objection and the defendant duly excepted.

During the examination of Pink Algood as a witness for the defendant, he testified that during the fall of 1895-1896 he cut some cross ties from the plaintiffs' lands; that he ,the said witness, had the receipt to which John Donehoo testified, but had lost said receipt; that said receipt was given for money paid for cross ties. The plaintiffs objected to this witness stating what the money was paid for, upon the ground that said witness was incompetent to testify as to the transaction with Bass as plaintiffs' agent, since said Bass was dead at the time the witness was testifying. The court sustained this objection, and the defendant duly excepted.

Evidence as to the market value of the ties was introduced; the witness testifying that the value of a tie was 5 or 6 cents in the trees before they were cut, and that after the trees were cut and the ties hewn out, they were worth from $12\frac{1}{2}$ to 25 cents per tie.

The defendant separately excepted to the following portions of the court's oral charge to the jury: (1.) "If at the time defendant received the letter from plaintiffs' agent notifying them of their claim to the ties, there were any ties not paid for and the defendant was put upon notice by plaintiffs that plaintiffs were claiming them as their property, and plaintiffs also gave defendant reasonable notice as to where the ties came from or put them in possession of such facts as they might as-

certain whether the ties came from plaintiffs' lands, and the defendant ignoring the notice took possession of them any how, then the defendant would be responsible for the value of the ties when they took them and removed them, and as to that lot of ties I charge you it would make no difference as to the value, that they were cut by third parties on the lands of plaintiffs. In that case the plaintiffs would be entitled to recover the value of all the ties the defendant appropriated to their use, after they were notified it was the property of the plaintiffs, if you find that the ties belonged to the plaintiffs." (2.) "If you find from the evidence that Mr. Bass was put in possession of the lands by the plaintiffs, and if you also find that at the time he was put in possession of the lands it was to take control of them and to keep off trespassers and to fix the lines, if you find that, and if you also find he rented a part of the lands at one time and turned the notes over to the plaintiffs, if that is all you find of his connection with the plaintiffs in this case and the property, that did not authorize him to tell persons they might cut timber from the lands." (3.) "Gentlemen, the payment to Mr. Bass would not be a payment in the light of his authority, without notice to the plaintiffs that he was collecting for them, and their ratification of his act."

At the request of the plaintiffs, the court gave to the jury the following written charges: (A.) "If the jury believe the evidence in this case, they will find a verdict for the plaintiffs." (B.) "It is the law in this case that if the railroad company purchased these ties, and that they were taken from the land of plaintiffs by willful trespassers, the measure of damages is the value of the cross ties at the time of the purchase by the railroad company." To the giving of each of these charges the defendant separately excepted, and the defendant also separately excepted to the court's refusal to give the following charges requested by it: (1.) "If the jury find from the evidence in this case that Bass was employed by the plaintiff to transact all of the business in relation to the lands mentioned in the agreement in evidence, then he was their general agent." (2.) "If the jury find

from the evidence that the plaintiffs put Bass in actual possession of the lands near Oneonta and held him out to the world as their general agent in and about said lands, then any payment made to him for timber or ties cut from said lands was lawful, and the plaintiffs can not recover in this action anything for all such ties as the jury find from the evidence was so paid for to said agent." (3.) "The court charges the jury that if they find from all the evidence in this cause that Bass was the general agent of the plaintiffs, and by them put in charge and control of the lands with authority to hold and control the same for the plaintiffs, and he, after ties had been cut off these, demanded and received pay therefor, then the plaintiffs can not recover any thing for ties thus paid for." (4.) "If the jury believe from all the evidence in this case that the plaintiffs had their lands in Blount county put into the actual possession of Bass and that he for a long time, to-wit, one year or more, had actual possession and control of them, renting part of them out, taking rent notes therefor which were afterwards found in plaintiffs' possession who were collecting the same, employing surveyors, keeping off trespassers and demanding and collecting pay for timber sold and for timber cut off said lands, then the jury will be warranted in finding that Bass was the general agent of the plaintiffs in and about said lands, and any person had a right to deal with him without inquiring the extent of his agency or authority."

There were verdict and judgment for the plaintiffs. The defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

THOS. G. JONES, for appellant.—The action here, is trover. It is an equitable action, in a sense—certainly as to principles on which the measure of damages is controlled. There are no obstacles in the nature of the action or the remedy which prevent dealing out of equal and exact justice in the award of damages. This, undoubtedly, is the Alabama doctrine.—*Warrior Coal Co.*

*v. Mabel Mining Co.,* 112 Ala. 626; *White v. Yawkey,* 108 Ala. 275.

It is the good or bad faith of the vendee, and not the title or right he took by transaction with the original taker, which furnishes the measure of recovery of damages in such an action.

According to the unvarying language of the authorities this is the test of the measure of damages in trover. The innocent vendee can not be punished because he was cheated in the title. Damages beyond a sum fully adequate to recompense for the original loss to the true owner, can have no foundation except as punishment to a wrongdoer; and the law never punishes the innocent. The justice and truth of the principle for which we contend, is no where better demonstrated than in *Herdic v. Young,* 55 Pa. State, 176. In that case, the court says: "The moment we are at liberty to resort to the circumstances attending the taking, to qualify the general rule, it can make no difference whether it be to *moderate* or to enlarge the damages. If we go *beyond* the value to compensate for injustice and outrage, the same principle requires us, in a proper case, to *restrict,*" etc. Judge COOLEY, adds the weight of his name in favor of the principle of *Witherbee v. Greene,* 22 Mich. 311, and it has been approved by the Supreme Court of Ohio in *R. R. Co. v. Hutchins,* 37 Ohio State, 282; s. c. 32 Id. 571, and by the Supreme Court of Wisconsin in *Weymouth v. Railroad Co.,* 17 Wis., and *Single v. Schneider,* 24 Wis. 299. 1 Sutherlin on Damages, § 103, gives it his sanction. Moreover, this court has pointedly approved the principle, in *White v. Yawkey,* 108 Ala. 275. See also *Heard v. James,* 49 Miss. 247.

The court erred in not allowing the witness Evers to answer the question whether the merchants from whom he bought the ties "were men of good character and reputable standing as merchants." The measure of damages turns upon the good faith of the transaction. The answer tended to throw light upon the *bona fides* of defendant's purchase. Large latitude is allowable in evidence to prove or disapprove fraud, bad faith, etc. The case of *Martin v. Hardesty,* 27 Ala. 458, seems in

[Birmingham Min. R. R. Co v. Tenn. Coal, Iron & R. R. Co. *et al.*]

point. The evidence of plaintiff's character was allowed, because it shed light on the existence of probable cause for suspecting him of larceny. See also *Hudson v. Grocery Co.*, 105 Ala. 208. The fact that defendant bought ties from merchants who claimed them as their own, when those merchants were men of "good character and reputable standing," was an important circumstance bearing on defendant's good faith.—*Porter v. Stone*, 62 Iowa, 542; *Cook v. Perry*, 43 Mich. 623.

The court erred in refusing the second charge asked by the defendant. If, as the charge predicates, the jury found from the evidence that plaintiffs put Bass in actual possession, and held him out to the world as their general agent, in and about the lands, certainly payments made to him for timber or ties cut from the land were lawful.—*State v. Banks*, 48 Md. 513; *Sacalari v. R. R. Co.*, 16 A. & E. R. R. Cases, 584.

The court erred in the refusal to give the third charge requested by the defendant.—*Renwick v. Wheeler*, 4 McCrary 119. See also *Welsh v. Hartford Ins. Co.*, 73 N. Y. 5; *A. G. S. R. R. Co. v. Hill*, 76 Ala. 303.

TILLMAN & CAMPBELL, *contra*.—The insistence for appellant in his oral argument and written brief to the effect that where there has been a willful trespass, the owner can not recover from the willful trespasser's innocent vendee anything more than the value of the property at the time of the trespass, is not sustained by the authorities nor by reason of the law. *Bowles Wooden Ware Co. v. United States*, 106 U. S. 432, is against the contention. The rule there declared is, that the measure of damages in trover as against a purchaser from a willful trespasser, though without notice of the wrong, is the value of the property at the time of the *purchase*. This in effect, is what the lower court charged in charge "B." We insist that the true rule is as stated in the court's charge, and cite the following authorities as sutaining it:—*Nesbit v. St. Paul Lumber Co.*, 21 Minn. 491; *Horsie v. Empire Lumber Co.*, 41 Minn. 548; *Woodenware Co. v. U. S.*, 106 U. S. 432; *Alta Mining Co. v. Benson Mining Co.*, 16 Pac. Rep. 565; *Parker v.*

*Waycross R. Co.*, 81 Ga. 387; *Silsburry v. McCoon*, 3 N. Y. 379; *Tuttle v. White*, 46 Mich. 485; *Coal Co. v. Cox*, 39 Md. 1; *Riddle v. Driver*, 12 Ala. 590.

SHARPE, J.—To show title to the ties alleged to have been converted, the attempt on the part of the plaintiffs was to prove they had been cut from land owned by them jointly by trespassers who disposed of them to certain tie contractors who in turn sold them to the defendant. There was evidence on the part of the defendant tending to show that payment had been made for some of the ties by persons who cut them or had them cut, to J. W. Bass, who, claiming to act as the plaintiffs' agent, agreed on and received the value. To make such payment available as a defense it devolved on the defendant to prove that Bass, who before the trial had died, was authorized to represent the plaintiffs in settling for the ties. So far as appears from the evidence, Bass' power to act for the plaintiffs rested in parol and therefore its extent so far as it could reasonably be inferred from the evidence was a question of fact for the jury to determine.—*S. & N. Ala. R. Co. v. Henlein*, 52 Ala. 606.

Acts and declarations of one whose agency is the subject of inquiry, though incompetent when there is no other evidence of agency or of ratification, become competent for consideration in determining both the fact of agency and the scope of authority originally given, when shown in connection with other evidence of agency. *McClung v. Spotswood*, 19 Ala. 165. And in such connection circumstances and transactions which have no direct connection with the issues tried may be considered when they are such as illustrate the general nature of the business entrusted to the agent.—*Lytle v. Bank*, 121 Ala. 215; *U. S. Life Ins. Co. v. Lesser*, 126 Ala. 568.

Testimony was introduced on the trial tending to show that for about fifteen years plaintiffs had an agent employed to look after the lands, to list them for taxes, and also to look after the timber; that some months before the time when the settlement is said to have occurred, Bass had been put in charge of the lands in the

place of the former agent, and thereafter claiming to act as plaintiffs' agent he leased out several tracts of the land to various persons, took rent notes therefor—one of which at least he turned over to the plaintiffs—and that he collected for timber cut, had surveying done for which the plaintiffs paid, and witness stated in substance that Bass was held out by the plaintiffs as their agent in that community. In view of this evidence and the principles to which we have referred, it was erroneous for the court to charge the jury as a conclusion of law that "payment to Mr. Bass would not be a payment in the light of his authority without notice to the plaintiff that he was collecting for them and their ratification of his act."

The evidence discloses that besides the plaintiffs' lands there were others adjacent from which ties were cut for the defendant and that some ties cut from plaintiffs' lands were for use at Champion Mines. Whether any ties cut from the plaintiff's lands were received by the defendant and not paid for is not proved with such clearness as to warrant the withdrawal of that question from the jury as was done by charge "A."

J. D. Allgood's statement that he saw Bass give a receipt for ties cut by Pink Allgood for the Champion Mines, though not a part of the ties in question, was relevant in connection with the other evidence of agency to show that Bass was empowered to collect for the timber in question.

It does not appear that Pink Allgood had any interest in ties which went to defendant, or that he was interested in any way in the result of the suit. The persons who under section 1794 of the Code are disqualified to testify about transactions with, or statements by one who has died before the trial, had or done while acting as agent for the adverse party, are those only who have a pecuniary interest in the result of the suit.

If by action of their agent either originally authorized or afterwards ratified, the plaintiffs accepted an agreed price for timber or ties, the transaction amounted to a sale, and effected a divestiture of plaintiff's title.

[Birmingham Min. R. R. Co v. Tenn. Coal, Iron & R. R. Co. *et al.*]

But so long as the plaintiffs did nothing to divest themselves of their ownership in the timber and its identity was not lost in the process of accession or otherwise, the plaintiffs had the right to be repossessed of the property and to maintain either detinue or trover therefor though it may have assumed a changed and more valuable form.—*Street v. Nelson,* 80 Ala. 230; *Riddle v. Driver,* 12 Ala. 590; *Cooper v. Watson,* 73 Ala. 252.

Ordinarily the measure of damages in trover when the property has been wholly lost, and when as in this case its market value is not shown to have fluctuated, is the value of the property at the time and place of conversion with interest to the time of trial.—*Street v. Nelson,* 67 Ala. 504; *Linam v. Reeves,* 68 Ala. 89; *Burks v. Hubbard,* 69 Ala. 379. Respecting property such as timber and mineral which has been a part of land and has become personal property by having been detached therefrom without the owner's consent, a peculiar principle has been evolved probably to lessen hardships resulting from uncertainties of boundary or title. Under it one who at the cost of labor or skill, has developed into a more valuable species of property something he has inadvertently severed from another's land, may, when sued in trover, be allowed an abatement in damages to the extent of the added value; "and the same rule prevails when trover is brought against the unintentional trespasser's innocent vendee who is treated as standing in the shoes of his innocent vendor."—*White v. Yawkey,* 108 Ala. 270; *Winchester v. Craig,* 33 Mich. 205; *Bolles Wooden-ware Co. v. U. S.,* 106 U. S. 432. This is an exception to the general rule and does not apply when the severance was willful, nor does it appear that there is sufficient reason or necessity for extending it in favor of the willful trespasser's vendee though he be guiltless of intentional wrong. It is upon the theory and fact of ownership in the property in its improved form that the recovery might have been had in such case of the vendor, and it must be by a questionable invention of doctrine if a right can be accorded to the trespasser, or allowed to his vendee, to restrict the owner's rights by a transfer of the property between themselves. A consideration

opposed to allowing the abatement of the assessed value in such case is forcibly stated in *Bolles Wooden-ware Co. v. U. S.*, 106 U. S. 432, where it was said it would have effect "to give encouragement and reward to the wrong-doer by providing a safe market for what he has stolen and compensation for the labor he has been compelled to do to make his theft effectual and profitable."

The case of *Railroad Co. v. Hutchins,* 37 Ohio, 282, holds, and presents in perhaps its strongest light the opposite view; but a dissenting opinion was there rendered by Chief Justice BOYNTON which in line with the *Bolles Wooden-ware Case, supra,* denies the asserted right of a vendee to abate when his vendor could not. We accept this view as being in consonance with the weight of authority and with the legal axiom that no man is to be deprived of his property except by his consent or by operation of law. It follows the court did not err in giving charge "B."

Authority to transact business in relation to lands did not as a matter of law constitute Bass plaintiffs' general agent as is asserted by charge 1 refused to defendant. Nor did it follow as a legal conclusion from the fact that Bass was placed in charge of the lands, that he could by his acts define the scope of his agency so as to be binding on the plaintiffs without regard to whether those acts were otherwise authorized or were known to and ratified by the plaintiffs, as is assumed by charge 4.

A general agency implies authority in the agent to act generally in all the business usually conducted by the principal. The evidence on the subject of Bass' agency did not extend to the plaintiffs' general business, and would not have warranted the jury in finding that Bass was plaintiffs' agent in their general business affairs. Therefore, charge 3 was abstract, and charge 2 was properly refused.

Parts of the oral charge excepted to need not be noticed as they will probably not be repeated in the same language on another trial. An assignment of error purports to be based on a ruling respecting Martin's testimony which does not appear of record. Some

others relating to testimony are assigned as error, but they are not insisted on in appellant's brief and may not occur again.

For the errors pointed out the judgment must be reversed. The cause will be remanded.