# Henderson-Mizell Mercantile Co. v. Chapman & Co.

## *Trover.*

(Decided Nov. 30, 1911.    57 South. 82.)

1. *Corporations; Agents; Torts; Respondeat Superior.*—The liability of a corporation for the acts of its agents under the doctrine of respondeat superior is no greater than that of a natural person, and while liable for any tort committed by its agent in doing the business which he was employed to transact, although the particular act may have been committed without the knowledge of the principle and in violation of direction, it is not responsible for an act of the agent while in no way engaged in that business.

2. *Same; Scope of Employment.*—The facts in this case stated and held not to render the corporation liable in trover for the acts of its employees in assisting the owner to recover his mules and wagons, as the acts were so disconnected from the service for the principal that no liability therefor would attach.

3. *Evidence; Hearsay; Declaration of Agent.*—A declaration of an agent made after the occurrence charged to have been a conversion, and not shown to have been made in connection with any transaction at that time by or on behalf of the principal with the property in question were inadmissible as without the scope of the agent's authority to bind the principal.

APPEAL from Geneva Circuit Court.

Heard before Hon. H. A. PEARCE.

Trover by C. D. Chapman & Co., against the Henderson-Mizell Mercantile Company. Judgment for plaintiff and defendant appeals. Reversed and remanded.

W. O. MULKEY, for appellant. If any conversion occurred Pinckard was the only one liable.—*Dent & Cade v. Childs,* 5 S. & P. 392. The principal was in no event

[Henderson-Mizell Mercantile Co. v. Chapman & Co.]

liable, unless the employe was acting for or on behalf of the corporation or was engaged in a business within the scope of his employment.—Authorities supra. The court erred in admitting the declarations made long after the transaction had occurred.—*Nelson v. Averson,* 17 Ala. 216; *Tenn. Co. v. Kavanaugh,* 93 Ala. 324.

C. D. CARMICHAEL, for appellee. The evidence shows such an exercise of dominion over the property to the exclusion of plaintiff's right to the same as to amount to a conversion.—4 Mayf. 987-8. The employes were acting within the scope of their employment.—*Henderson Co. v. Hinson,* 157 Ala. 640. Mizell was the manager of the corporation, and his declarations were admissible as they related to the particular occurrence.— 10 Cyc. 915; Id. 947; 31 Cyc. 1857; *Home I. Co. v. Widden,* 103 Ala. 206; *Com. F. I. Co. v. Morris,* 105 Ala. 498; *Henderson Co. v. Hinson, supra; S. A. L. Ry. Co. v. Hubbard,* 142 Ala. 546.

WALKER, P. J.—This is an action for the conversion of a wagon and two mules which had been mortgaged to the plaintiff (the appellee here). The transaction on which is based the charge that the defendant (appellant) corporation converted the mortgaged property was as follows: The mortgagor, Campbell, who lived in Florida, came in the wagon, accompanied by his young son, to the town of Samson in this state, stopped in the street near the storehouse of the defendant, unhitched the mules and tied them to the hind wheel of the wagon, and went into the defendant's store. While he was in the store making a settlement for a bale of cotton with J. S. Pinckard, one of the defendant's clerks, his son, called attention to the fact that some one had hitched the mules to the wagon and

was about to drive off. Campbell said, "Don't let him take my mules," and he and the clerk with whom he was dealing went out into the street, and the clerk prevented the man, one Sykes, who had hitched the mules to the wagon, from driving off with them. The manager of the defendant's store also came out and assisted in getting Sykes to surrender possession of the wagon and team, having threatened to have him arrested if he did not do so. After this occurrence Campbell took charge of his wagon and team and returned with them to his home in Florida, one of the clerks in the defendant's store going with him at his request and with the permission of the manager of the store. The circumstances principally relied on in argument for the appellee as tending to show a connection of the defendant corporation with the transaction in this statement by Sykes in the course of his examination as a witness for the plaintiff: "Me and Mr. Clark just loosed them and hitched them to the wagon, and got in and drove off, when Mr. Pinckard ran up and grabbed hold of the bridle, and says, 'What does this mean:' and I said to satisfy a debt Campbell owed, Chapman had authorized me to take them. He said, 'We have one, too, and you are not going to take the team away from him.'" The testimony tended to show that when demand was made on Sykes to show his authority to take possession of Campbell's property he did not exhibit or make known the authority under which he was acting. However, Chapman had authorized Sykes to take possession of the wagon and team under the mortgages to him. No one on behalf of the defendant at any time assumed possession or control of the wagon or team, or asserted any claim to it. The claim of the appellee is that on the evidence tending to prove the state of facts above summarized it was a

question for the jury whether the appellant was liable for a conversion of the wagon and team.

The liability of a corporation for a tort committed by its agent is but an application of the doctrine as a part of the law of agency; and in respect of such liability private corporations stand before the law on the same footing as natural persons. A state of facts which would not render a natural person liable for an act of one who was at the time his agent would not render a corporation liable if it is the principal or employer sought to be charged.—*Jordan v. Alabama Great Southern R. Co.,* 74 Ala. 85, 49 Am. Rep. 800; 10 Cyc. 1204. "It is a general rule of the law of agency, that a principal is liable for any tort committed by his agent in the performance of the business which he was employed to transact, even though the particular act constituting the tort may have been done without the knowledge of the principal, and in violation of his express directions; but a principal is not responsible for an act performed by his agent while in no manner engaged in performing the business of the principal."—2 Morawetz on Private Corporations (2d Ed.) § 730. The principal is liable when the wrong was committed by the agent while acting within the general scope of his employment; and he is not liable when the agent, in committing the wrong, steps outside of the line or scope of his employment to accomplish some purpose of his own having no relation to the business of the corporation in which he is employed. The doctrine of respondeat superior has no application where the employe, for the time being, abandons the business he was employed to transact, and commits an independent wrong while engaged in a transaction having no connection with that business.— *Johnson v. Alabama Fuel & Iron Co.,* 166 Ala. 534, 52 South. 312; *Goodloe v. Memphis & Charleston R. Co.,*

107 Ala. 233, 18 South. 166, 29 L. R. A. 729, 54 Am. St. Rep. 67; *Daniels v. Carney,* 148 Ala. 81, 42 South. 452, 7 L. R. A. (N. S.) 920, 121 Am. St. Rep. 34; 10 Cyc. 1206. These rules are familiar, and are not questioned. The dispute here, as is generally the case, turns on the inquiry as to whether the act complained of was done while the agent was acting within or outside of the general scope of his employment.

In the case at bar there is nothing in the evidence to support an inference that the employes of the defendant were any longer engaged in any way in transacting its business when they responded to the appeal of Campbell for assistance in preventing Sykes, a stranger not known to have any kind of claim of right to accomplish what he was trying to do, from getting away with his wagon and team. They simply dropped the business of the store, and lent their aid to Campbell in protecting his property. Their purpose in this was wholly foreign to the business of the defendant Nor was there any evidence of a change of plan or purpose when Sykes made it known that what he was doing was in an effort to collect a debt due to Chapman. The remark of Pinckard testified to by Sykes does not indicate that the former claimed the property for the defendant, or undertook to do anything for or on behalf of the defendant in reference to it. At no time did any one have or claim possession for or on behalf of the defendant. All that was done or attempted was to thwart the attempt of Sykes to get away with the wagon and team, and to restore them to Campbell, who at once resumed the possession and control which Sykes had attempted to interrupt. It is the merest unsupported conjecture to claim that at any stage of the occurrence above detailed either of the defendant's employes who figured in it was engaged in the business of

the defendant which he was employed to transact. What they did was in no way incident to their employment. During the progress of the occurrence these employes ceased to execute their agency for the defendant. While they were rendering this service to Campbell they were in no wise acting in the line of their engagement to their employer. It is an instance of an act of an agent being so disconnected and apart from the service for which he was employed as not to subject his principal to any liability on account of it. If what was done amounted to a conversion, it was a conversion for which, under the evidence, the defendant corporation is not chargeable.

The trial court was in error in admitting, over the objection of the defendant, evidence of a declaration or statement made by an agent of the defendant in reference to the occurrence after it had happened, and not shown to have been made in connection with any transaction or dealing at that time by or on behalf of the defendant with the property in question. It was beyond the scope of the agent's authority to bind his principal by such admissions or declarations having reference to a bygone transaction.—*Western Newspaper Union v. Judson,* 1 Ala. App. 615, 55 South. 1026; *Tennessee River Transportation Co. v. Kavanaugh Bros.* 93 Ala. 324, 9 South. 395. With this evidence excluded, as it should have been, the defendant was entitled to the general affirmative charge requested in its behalf.

Reversed and remanded.