[Birmingham Ledger Co. v. Buchanan.]

# Birmingham Ledger Co. *v.* Buchanan.

## *False Imprisonment.*

(Decided May 19, 1914.   Rehearing denied June 11, 1914.
65 South. 667.)

1. *Master and Servant; Injuries to Third Persons; Course of Employment.*—As used in the statement of the doctrine of respondeat superior the term, "course of employment," does not mean necessarily that the master has conferred express authority upon the servant to perform the act complained of; the requirement that the act must be in the course of the servant's employment in order to render the master liable is complied with if the act was committed by the servant while executing his service, not for a purpose of his own having no relation to the master's business, but as an incident to and in the carrying on of the business of the master, in which the servant was engaged at the time.

2. *False Imprisonment; Injury to Third Person; Respondeat Superior.*—The evidence examined and held to support a finding that the person who detained plaintiff in a room on the premises occupied by defendant until an important "extra" was published, was in the employment of defendant and was at the time acting in the course of his employment.

3. *Same; Evidence.*—Where the action was for false imprisonment on account of the detaining of a newsboy by the newspaper corporation defendant, and there was evidence that S. was the secretary of the defendant corporation, it was competent to show that plaintiff requested S. to let him out of the room in which he was detained, and that S. refused to do so.

4. *Same.*—In connection with the testimony of other witnesses as to the indications on plaintiff's person, and concerning the condition of his clothing indicating rough usage to which he had been recently subjected, it was competent to show that as soon as he was permitted to leave the place in which he had been confined, he went immediately to a place nearby at which the other witnesses saw him.

5. *Same.*—Where there was evidence from which the jury could infer that the matters so testified to were attributable to the experiences to which plaintiff was subjected by an enforced confinement with a number of rough, turbulent, older boys than himself, it was not improper to admit testimony as to marks on plaintiff's person, indicating recent crying and undue excitement, and of the torn and soiled condition of his clothes immediately after he was released from confinement.

6. *Same.*—Evidence that during the confinement of the boys while awaiting the publication of an extra, defendant's secretary struck and choked one of the other boys was admissible as tending to show that the detention was accompanied by physical violence calculated to intimidate and overawe those not subjected to such treatment.

7. *Same.*—Where the action was for false imprisonment for confining plaintiff and other newsboys, evidence that there was no way for the boys to get out of the room in which they were confined was admissible.

8. *Same; Damage; Punitive.*—Punitive damages may be recovered for false imprisonment with actual malice, or its legal equivalent, and such malice may be found from proof of a wanton disregard of plaintiff's rights.

9. *Same.*—Where the newspaper corporation was about to publish an important extra to announce the name of the nominee for president by the Republican National Convention then in session, and incarcerated plaintiff and a number of other newsboys in its circulation room until the extra was issued, in order that they might be ready to distribute the paper, and to prevent them from selling a rival paper, plaintiff's restraint was without any pretense of legal dispute, and was sufficient on which to justify the award of punitive damages in an action for false imprisonment.

10. *Same; Instructions.*—A charge asserting that to justify an award of punitive damages the jury must be reasonably satisfied that the conduct of defendant was consciously wrong, or in reckless indifference to plaintiff's right, might have misled to the belief that it was necessary to prove corporate participation in the wrong, notwithstanding its commission by an agent or employee was proved as alleged in the complaint, and hence, the charge was properly refused.

11. *Evidence; Conclusion.*—Where the action was for false imprisonment for being detained for several hours in the circulation room of the defendant corporation, it was competent for plaintiff to testify that he was kept or detained there against his will.

12. *Appeal and Error; Harmless Error; Evidence.*—The admission of evidence may be cured by an instruction withdrawing it from the jury, if its admission was erroneous.

13. *Same; Harmless Error; Instructions.*—In an action for false imprisonment, a charge requiring the jury to be reasonably satisfied that plaintiff's imprisonment was willfully and unlawfully done by defendant's servant acting within the line and scope of his employment, and authority, in order for the jury to award punitive damages, was harmless to the defendant, as the willfullness so predicated imported an intentional wrong, and mere wantonness was sufficient to justify the award of punitive damages.

APPEAL from Jefferson Circuit Court.

Heard before Hon. C. B. SMITH.

Action by Alfred Buchanan against the Birmingham Ledger Company for damages for unlawful imprisonment. Judgment for plaintiff, and defendant appeals. Affirmed.

The facts sufficiently appear from the opinion. The following is charge 26, given for defendant:

[Birmingham Ledger Co. v. Buchanan.]

I charge you that there is no evidence in this case that the policeman was acting as agent of defendant, and that the testimony concerning his presence in the building of defendant is immaterial and of no value, and is to be excluded from your consideration.

The charge referred to in the thirty-sixth assignment of error is as follows:

I charge you as a matter of law that you are not entitled to assess punitive damages in this case unless you are reasonably satisfied from the evidence that the conduct of defendant was consciously wrong, and in reckless indifference to the rights of defendant.

COLEMAN & COLEMAN, for appellant. The action being false imprisonment, it becomes necessary for plaintiff to reasonably establish three things; First, that he was deprived and detained of his liberty and against his will; that this was done by an agent, servant or employee of defendant; and done while said agent, servant or employee was acting within the line and scope of his employment and authority.—*Johnson v. Ala. F. & I. Co.,* 166 Ala. 534; *Wes. Ry. v. Milligan,* 135 Ala. 205; *Goodloe v. M. & C. R. R. Co.,* 104 Ala. 233; *Collins v. A. G. S.,* 103 Ala. 390; *M. & O. v. Seals,* 100 Ala. 368; *Bir. W. W. Co. v. Hubbard,* 85 Ala. 82; 31 Cyc. 1640; 3 Bailey on Personal Injury, 1985; Meacham on Agency, 581. Before evidence is admissible in any cause it must be relevant and material to the issues involved.—*Steen v. Swadley,* 126 Ala. 619; *Langworthy v. Goodall,* 76 Ala. 325; *Wharton v. Cunningham,* 46 Ala. 590. What plaintiff did after he left defendant's premises or his condition at the time he reached his mother is not admissible.—*Moore v. N. C. & St. L.,* 137 Ala. 495; *L. & N. v. Pierson,* 97 Ala. 211; Jones on Evidence, sec. 348. What some one in the room of

defendant may have done to some other boy while plaintiff was in the circulation department was not material. —*Davis v. Alexander,* 137 Ala. 210; *Langford v. State,* 130 Ala. 76; *M. & A. of Birmingham v. Starr,* 112 Ala. 98; 1 Greenl. sec. 52. On these same authorities what plaintiff said to the policeman or what the policemen did in the basement at the time plaintiff was there, or what any other boy may have done or said was not material or admissible. Under the evidence in this case exemplary damages were not recoverable.—*Bir. W. W. Co. v. Keily,* 2 Ala. App. 629; *Wilkinson v. Searcy,* 76 Ala. 176; *Lienkauf, et al. v. Morris,* 66 Ala. 406. In actions of trespass exemplary damages are not recoverable unless the injury was done maliciously or wantonly, or with aggravating consequences.—*A. G. S. v. Arnold,* 80 Ala. 601; *Garrett v. Sewell,* 108 Ala. 521; *B. R. L. & P. Co. v. Nolan,* 134 Ala. 332.

F. E. BLACKBURN, and MORRIS LOVEMAN, for appellee. Under all the evidence in this case it was properly submitted to the jury to determine whether or not the doors were locked by an officer or agent of the corporation while acting within the line and scope of his authority.—*A. G. S. v. Frazer,* 9 South. 303; *Gassenheimer v. Wes. Ry.,* 57 South. 718; *J. & C. Conf. Co. v. Booze,* 62 South. 12. The strongest authority and one nearest in point is that of *Robinson & Co. v. Green,* 43 South. 798. On this authority it was competent for plaintiff to testify that he was kept or detained against his will. On the same authority there was no evidence in the admission of evidence, and if there was error in the admission of evidence relative of the presence of the policemen being present in the building, it was cured by written charge 26.—*A. G. S. v. Frazer, supra;* *DeYampert v. State,* 139 Ala. 53. Under the evidence

punitive damages were recoverable and hence, the court was not in error in refusing the charges requested by defendant, or in that portion of the oral charge excepted to.—*Gambill v. Cargo,* 43 South. 866.

WALKER, P. J.—This was an action by the appellee to recover damages for an alleged unlawful imprisonment and detention of himself, which in the several counts upon which the case went to the jury were alleged to have been caused by an agent, servant, or employee of the defendant while acting within the line and scope of his employment, one count alleging that the name of such agent or employee was to the plaintiff unknown, another count averring that his name was Thomas B. Smith, and still another averring that his name was L. C. Miller. There was evidence tending to prove the following state of facts: During the afternoon or evening of a day when the last Republican National Convention was in session, and when the news of its nomination of a candidate for President was expected, the plaintiff, who was a newsboy about 10 years old, engaged in selling papers on the streets of Birmingham, went to the place of business of the defendant to get papers to sell. He paid for some papers, received a ticket or slip showing the number of papers to which he would be entitled when they were ready for delivery, and went into a part of a large room, which was the quarters of the circulation department of the defendant's paper, separated from the remainder of the room by a wire netting, this compartment being the place assigned for the occupancy of the newsboys while waiting for an issue of the paper. Quite a crowd of newsboys— stated by different witnesses, respectively, to be 100, 75, and 50—assembled there on this occasion, all on the same mission. Several hours elapsed before the issue of

a proposed "extra" which was to give the news of the nomination for the presidency. In the meantime the boys, including the plaintiff, tried to leave before the expected extra was issued, but were not permitted to do so. The door of the room was locked, and they could not get out. One of the objects of this forcible confinement of the boys was to keep them from selling papers other than the defendant's. Representatives of a rival newspaper came there to get the boys out, but the latter were kept confined where they were until the defendant issued its "big extra" after 9 o'clock at night. During the time the boys were assembled there, and were crying and begging to be let out they were served by the defendant with sandwiches and ice cream, and defendant's secretary, Thomas B. Smith, and L. C. Miller, its circulation manager, were in the quarters of the circulation department, and saw what was going on in the compartment of it occupied by the boys.

It is contended in behalf of the appellant (defendant below) that the general affirmative charges requested in its behalf should have been given because of the absence of any evidence tending to prove that the restraint of the plaintiff was caused by either of the persons who in different counts were charged with the commission of the wrong, and because, even if the evidence be regarded as having a tendency to prove that the wrong was committed by an agent or employee of the defendant, of its lack of any tendency to prove that such agent or employee in doing so was acting within the line or scope of his employment by the defendant. The evidence introduced by the plaintiff consisted of the testimony of himself and other witnesses and the answers made for the defendant by L. C. Miller, its circulation manager, to interrogatories propounded by the plaintiff. No evidence was offered by the defendant. It

is true that there was no direct evidence which identified as an agent or employee of the defendant the person or persons who kept the boys locked in. The way the direct evidence fell short of furnishing such identification is illustrated by the following extracts from the testimony of different witnesses:

"I saw them filling the cones with ice cream in the next room, and then they handed them to us through the door. They unlocked the door to give them to us. They had to unlock the door. They unlocked the door and handed them to us, and they had hold of the door at the time they done that." "After I went down in that room the doors were locked on me." "I saw somebody lock the door, but I do not know his name."

It is to be observed that in none of these instances does the witness name the person who is referred to. But we are of opinion that there were circumstances disclosed by the testimony which were such as, in connection with the direct evidence, furnished support for the inference that the wrong complained of was committed as alleged in the several counts upon which the case went to the jury. The incident occurred during business hours in the defendant's establishment, at a time when there was such a demand for news of the proceedings of a convention then in session as to call for issues of the paper in addition to the regular one, and in a place where what happened could be seen and heard by officers and employees of the defendant who were in charge of that part of its premises, and who were then engaged in preparations for the issue and circulation of an extra of exceptional interest. Agency and the scope of it, like other facts, may be proved by circumstantial, as well as by direct, evidence, or by the two kinds of evidence considered together. The evidential significance of such circumstances as the following

is not to be overlooked: For several hours of a busy part of a busy day a crowd of from 50 to 100 newsboys were kept confined in a part of the quarters of the circulation department of a daily newspaper which was in plain view of the manager of that department, and was readily accessible to other officers and employees of the defendant. During this time the boys were noisily clamorous to be allowed to get out. The manager of the circulation department sought to keep them satisfied by having sandwiches and ice cream served to them. The door was unlocked for this purpose, but exit through it was blocked while this was done. While the excitement was running high, T. B. Smith, the defendant's secretary, came to where the boys were and gave a negative answer to the plaintiff's request to be let out. When he went out the door was locked behind him. It was opened to let boys in as they came to get papers, but was locked when they got in. There is no suggestion in the evidence that while these things were happening any one other than officers and employees of the defendant had charge or control of any part of its premises, or that the door was locked and unlocked by some one other than the employee or employees who had been intrusted with keys to it. Whoever was directly responsible for the enforced confinement of the plaintiff was where an agent of the defendant should have been, and, in controlling the means of entrance to and exit from a part of its premises, was exercising an authority of such an agent, and this participation in the occurrence was in behalf of the defendant, and was actuated by a purpose to promote an interest of the defendant itself in the publication and circulation of an issue of its paper. The defendant's secretary and the manager of the department of its business in the quarters in which the incident in question occurred were present

while it was in progress, and it legitimately might be inferred from facts deposed to that the door was locked or unlocked pursuant to orders or directions from, or with the approval of, each of these representatives of the defendant. The answers to the interrogatories propounded by the plaintiff were made for the defendant by L. C. Miller, the manager of its circulation department. These answers import personal knowledge on his part of what occurred on the occasion in question. From them the jury might conclude that he participated in what happened, though they did not accept his version of the occurrence as the correct one. We think that the references which have been made to some of the direct and circumstantial evidence in the case sufficiently indicate the grounds of the conclusion reached that, considering all the evidence in the case, it must be regarded as furnishing support for the inferences that some agent or employee of the defendant, whose name was to the plaintiff unknown, Thomas B. Smith, the secretary of the defendant corporation, and L. C. Miller, the manager of its circulation department, each participated in or contributed to, and so shared in the responsibility for, the wrong of which the plaintiff complined in the several counts of his complaint.—*South & North Ala. R. Co. v. Henlein,* 52 Ala. 606, 23 Am. Rep. 578; *Birmingham Mineral R. Co. v. Tenn. Coal, Iron & R. Co.,* 127 Ala. 137, 28 South. 679; *Galbreath v. Cole,* 61 Ala. 139; *Robinson & Co. v. Greene,* 148 Ala. 434, 43 South. 797.

Nor was proof lacking that each of such representatives of the defendant who participated in the wrong complained of was acting within the "course of his employment" in the sense in which that and similar expressions are commonly used in statements of the doctrine of respondeat superior as a part of the law of prin

cipal and agent.   For the conduct of its agent to im-
pose liability upon the defendant it was not necessary
for the latter to have authorized anybody forcibly to de-
tain a newsboy in order to secure his services when de-
sired.   If the wrong was committed by the agent while
he was executing his agency on the defendant's prem-
ises, not for a purpose of his own having no relation to
the business of the defendant, but as an incident to the
carrying on of that business, in the transaction of which
he was engaged at the time, the defendant is liable
though it did not authorize the agent to resort to such
means in rendering the service for which he was employ-
ed.—*Birmingham Waterworks Co. v. Hubbard,* 85 Ala.
179, 4 South. 607, 7 Am. St. Rep. 35; *Hardeman v. Wil-
liams,* 150 Ala. 415, 43 South. 726, 10 L. R. A. (N. S.)
653; *Colley v. Lewis,* 7 Ala. App. 593, 61 South 37;
*Henderson-Mizell Mercantile Co. v. Chapman,* 3 Ala.
App. 296, 57 South. 82; *Jebeles & Colias Confectionery
Co. v. Booze,* 62 South. 12.   There was evidence tend-
ing to prove that the participation of each of the agents
of the defendant who were referred to in the several
counts of the complaint in the wrong to the plaintiff for
which the defendant is sought to be charged with lia-
bility was an incident to the making of preparations for
the circulation and sale of an issue of the defendant's
paper, which obviously was one of the main objects of
the business in which the defendant was engaged, the
furtherance of which was not foreign to the business
the agent was employed to transact.   There was not
such deficiency of evidence in the particulars suggested
as to entitle the defendant to have given the general af-
firmative charges in its favor which were refused.

The overruling of the defendant's objection to the
question asked the plaintiff, "Did you ask any person to
let you out of the room?" did not result in letting in

inadmissible testimony. The substance of the answer
to the question was that the plaintiff asked Mr. Smith to
let him out of the room, and that he refused to do so.
There was evidence tending to identify the person men-
tioned by the witness as Mr. T. B. Smith, the secretary
of the defendant corporation. So the testimony of the
witness in answer to the question, in connection with
other evidence adduced, tended to prove a material
averment of one of the counts of the complaint.

It was not error to permit the plaintiff to testify that
he was kept or detained against his will. As was said
in reference to a very similar ruling, which was re-
viewed in the case of *C. N. Robinson & Co. v. Greene,*
148 Ala. 434, 43 South. 797:

"It was a statement of a fact capable of proof by no
one so well as by the plaintiff, and was not the expres-
sion of an opinion, reason, or conclusion of the witness
as objected by defendant."

In connection with the testimony of other witnesses
as to the indications on the plaintiff's person, and in the
condition of his clothing of the rough usage to which
he had then recently been subjected, it was permissi-
ble to prove that as soon as he was permitted to leave
the place in which he had been confined he went im-
mediately to the place near by at which such other wit-
nesses saw him.

It was not improper to admit testimony as to the
marks on the plaintiff's person of recent crying and un-
due excitement and of the torn and soiled condition of
his clothing immediately after he was released from
confinement, as there was evidence from which the jury
could infer that the things so testified to were attribut-
able to the experiences to which the plaintiff was sub-
jected by an enforced confinement with a number of
rough and turbulent newsboys, many of them older
and larger than himself.

Nor was it improper to admit evidence as to Mr. Smith, the defendant's secretary, on the occasion in question, striking and choking one of the boys other than the plaintiff. The evidence had a tendency to prove that the detention of the crowd of boys, including the plaintiff's was accompanied by the use of physical violence, calculated to intimidate and overawe others besides the one who actually was subjected to such mistreatment.—*C. N. Robinson & Co. v. Greene, supra.*

If error was committed in admitting testimony as to the visit of a policeman to the scene of the alleged detention, and as to what he did, this error was cured by the giving of written charge 26, requested by the defendant, by which that evidence was excluded from the consideration of the jury.—*De Yampert v. State,* 139 Ala. 53, 36 South. 772.

The statement of the witness Sol Dank, to the effect that there was no way for the boys to get out of the room, was one of fact pertinent to issues in the case, and its admission in evidence was not error.

The court properly refused the written charge requested by the defendant, to the effect that the plaintiff could not recover punitive damages. Such damage may be awarded for an unlawful detention of one's person committed with actual malice or its legal equivalent. The malice required as an element for the recovery of such damages exists if there is a wanton disregard of the rights of the injured party.—*Gambill v. Cargo,* 151 Ala. 421, 43 South. 866; 19 Cyc. 371 *Gambill v. Schmuck,* 131 Ala. 321, 31 South. 604; 12 Am. & Eng. Ency. of Law (2d Ed.) 781. There was evidence tending to show that the restraint of the plaintiff was without any pretense of legal excuse and of a kind to justify an award of punitive damages. The appellant cannot

[Birmingham Ledger Co. v. Buchanan.]

complain of the ruling on this subject, which was made in the part of the oral charge of the court, to which an exception was reserved. The effect of that instruction was to require the jury, in order to entitle them to award punitive damages, to be reasonably satisfied from the evidence that the imprisonment of the plaintiff was willfully unlawfully done by the servant, agent, or employee of the defendant while acting within the line and scope of his employment and authority. The willfulness so predicated imported an intentional commission of the wrong, a purpose or design to subject the plaintiff to it, and is a more aggravated fault than the mere wantonness which is requisite to justify an award of punitive damages.

The charge referred to in the Thirty-Sixth assignment of error is faulty in making it a prerequisite to the existence of a right to assess punitive damages that the jury be reasonably satisfied from the evidence "that the conduct of the *defendant* was consciously wrong or in reckless indifference to the rights of the plaintiff." To say the least, a charge so expressed was liable to mislead, as it was capable of conveying the impression that it was necessary, in order for the defendant to be subject to liability for punitive damages, to prove its corporate participation in the wrong complained of, though the commission of it by an agent or employee was proved as alleged in the complaint. The court is not chargeable with error for refusing to give that instruction.

We discover no error in the record which calls for a reversal of the judgment.

Affirmed.