## WILLIAMS v. CANNON.

1. Although there is evidence tending to show, that the defendant was aware that a horse which he sold to the plaintiff, was diseased with the sweeny, and *represented* that he was foundered, the representation does not *necessarily* amount to a *warranty* that the horse was not otherwise diseased than with founder; but it should be left to the jury to determine whether the terms employed were meant and received as a *warranty*, or as a *mere representation of the seller's opinion*. And the assumption by the Judge, in his charge, that the *representation* was a *warranty*, will not be legalized, or rendered harmless, because the jury would have been warranted in finding a verdict for the plaintiff upon the ground of fraud; for it cannot be known that their verdict was not induced by the charge of the court.

Writ of Error to the County Court of Wilcox.

THIS is an action of assumpsit, at the suit of the plaintiff in error, on a promissory note made by the defendant on the 29th November, 1842, for the payment of eighty-five dollars, to the plaintiff, on the 1st of March thereafter. The cause was tried upon issues on the following pleas, viz: 1. *Non-assumpsit*. 2. Payment. 3. Set off. 4. Fraud. 5. Want of consideration. 6. Failure of consideration. A verdict was returned for the defendant and judgment was rendered accordingly.

A bill of exceptions was sealed at the instance of the plaintiff; from which it appears, that the consideration of the note declared on, was a gray horse, sold by the plaintiff to the defendant. That on or about the day of sale, the plaintiff was riding the horse in company with the defendant, when the latter inquired if the horse had not the sweeny, to which the defendant answered in the negative, remarking that the lameness proceeded from "a slight touch of founder," that the plaintiff had tested this by riding the horse over high logs, and if the facility with which he walked over logs was a test, the horse was merely foundered. It was further proved, that in a conversation between the plaintiff and his partner, McRory, a short time previous to the sale to the defendant, it appeared that the plaintiff procused his partner to trade for the

horse—remarking that he would take him off McRory's hands, if the latter did not desire to retain him. In this conversation, McRory and Williams, the plaintiff, speaking of the trade made for the horse, said they had been cheated, and spoke of him as a diseased horse.

A witness introduced at the trial, testified that a few days previous to the defendant's purchase, at the request of the plaintiff, he consented to ride the horse to town ; but as soon as witness mounted him, he discovered that he was slightly affected with the sweeny, that he limped, and that his shoulder was shrunk. Witness then informed the plaintiff that such was the condition of the horse, and thereupon witness procured another to ride, and led the horse in question. The witness remarked at the time of the sale, (defendant being present,) that the horse had the sweeny, which the plaintiff denied, saying that he was only slightly foundered.

It was proved that the plaintiff resided in the State of Tennessee, that the defendant applied to an individual with whom the note in suit was left, for the purpose, tendering the horse, but was informed, that that individual was not the plaintiff's agent.

The court charged the jury, if they believed that the plaintiff represented to the defendant, that the horse was not diseased with sweeny, but only foundered, when in truth he was affected with sweeny, it amounted to a warranty ; that no form of words were necessary to constitute a warranty. *Further*, if they believed that the plaintiff knew, at the time of the sale of the horse, that he was diseased with the sweeny, and represented him to be merely foundered, he practised a fraud on the defendant, and in that event the contract was void.

C. C. Sellers, for the plantiff in error.

No counsel appeared for the defendant in error.

COLLIER, C. J.—In Ricks v. Dillahunty, 8 Porter's R. 134, we said, that no particular form of expression was necessary to constitute a warranty. "It will, in general, depend upon the meaning of the terms, and the sense in which

they were used, or understood, by the parties, whether they amount to a warranty, or are to be understood as a representation of the seller's opinion.   Accordingly, where the vendor said of a colt he was about selling, " there is nothing the matter with the colt—it is well and sound, and will make a fine horse ;" it was submitted to the jury to say, whether there was a warranty, or only a mere expression of the vendor's opinion, and they were directed to say how the words were understood by the parties.   Such will be found to be the effect of the decisions, both in England and the United States.   See Ricks v. Dillahunty, *supra.*

The first charge given in the case before us, did not refer it to the jury, to determine whether the representation made by the plaintiff as to the horse's lameness, was understood as a representation of the plaintiff's opinion, or a warranty that it proceeded from a founder ; but assumed it as a legal conclusion that it was a warranty, and thus foreclosed the inquiry of the jury, as to the understanding and intention of the parties.   In this view of the law, the court erred, as is conclusively indicated by the case cited from 8 Porter, and the still later decision of Barnett v. Stanton & Pollard, 2 Ala. R. 182.

If the plaintiff made the representation in respect to the horse, with a knowledge of its falsity, he would be guilty of a fraud, which would have authorized the defendant to have rescinded his purchase ; or if he retained the horse, to claim deduction from the purchase money to the extent to which he was prejudiced.  See Barnett v. Stanton & Pollard, *supra.*

We are not permitted to speculate about the reasons which influenced the jury in finding their verdict, and attribute it to their conclusion upon the question of fraud, in order that it may be sustained.   It may be, and probably was quite as much the result of the first as the second charge.   Be this as it may, it cannot be assumed that the plaintiff is not prejudiced by the error in the ruling of the court.   The judgment is consequently reversed, and the cause remanded.