## CLEMENT *vs.* CURETON.

[ACION FOR BREACH OF WARRANTY OF SOUNDNESS OF SLAVE.]

1. *Objection to responsiveness of answer.*—An objection to a part of a deposition, on the ground that it is not responsive to any interrogatory, cannot be made for the first time during the trial.
2. *To what witness may testify.*—A witness cannot be asked to state why another person did a particular act.
3. *Error without injury in allowing illegal question to witness.*—The appellate court will not inquire into the legality of a question propounded to a witness, when the answer thereto elicited no illegal evidence.
4. *Difference between sale and exchange, and construction of statute (Code, §§ 399–400) forbidding sale of slave by unlicensed negro-trader.*—The charges of the court to the jury in this case, relative to the difference between a sale and an exchange, and as to the construction of the statute (Code, §§ 399–400) forbidding the sale of a slave by an unlicensed negro-trader, held, on the authority of *Williamson v. Berry*, (8 How. U. S. R. 544,) to contain no error prejudicial to the appellant.

APPEAL from the Circuit Court of Greene.

Tried before the Hon. WM. S. MUDD.

THIS action was brought by John T. Cureton, against Elizabeth W. Clement, to recover damages for a breach of warranty of the soundness of a slave, a negro man

Clement v. Cureton.

named Burrell. The defendant pleaded the general issue, with leave to give in evidence any special matter of defense; and also two special pleas, each averring, in substance, that the consideration of the sale of the slave Burrell, by the defendant to the plaintiff, was the sale of another slave, Louisa by name, by the plaintiff to the defendant; that the plaintiff was at that time a negro-trader, and had not procured a license as required by the statute; and that the sale was consequently void. The court overruled a demurrer to these special pleas, and issue was then joined upon them.

The material question in the case was, whether the contract between the parties was a sale or an exchange of slaves; the plaintiff contending that it was an exchange, and the defendant that it was a sale. The opinion of this court renders it unnecessary to give a detailed statement of the evidence. On the trial, as the bill of exceptions states, the defendant read in evidence the deposition of H. R. McLain, who was the overseer of his negroes at the time of the contract between him and the plaintiff, and whose deposition was taken on interrogatories and cross interrogatories. The 7th direct interrogatory to this witness, and his answer thereto, were in the following words: *Qu.* "Do you, or not, know whether the said boy Burrell, on or about the time of the sale or exchange between the plaintiff and defendant, was sick or complaining in any way? and if he was sick, or had complained in any manner, would you not have known or heard of it?" *Ans.* "I certainly would have known or heard of it, if he had been sick or complaining. *By my orders, when a negro got sick on the place, he had to come to me immediately, if I was about the place; and if Burrell was or had been sick at the time of said exchange, I never heard of it, and he never made any complaint to me.*" The plaintiff's counsel objected to the italicized portion of this answer "during the reading of the deposition", and moved to exclude or strike it out; the court sustained the objection, and the defendant excepted.

The plaintiff introduced a witness named Charles, and, during his examination, asked him, "why Cureton sold

or traded Louisa to the defendant." The defendant objected to this question, "as irrelevant, illegal, and improper", and reserved an exception to the overruling of his objection. The witness answered, "that it was to realize the money to pay him for the negro of his which Cureton had exchanged for Louisa."

"The defendant introduced one Watson as a witness, who testified, that he acted as the agent of the defendant, in part, in making the trade for the girl Louisa; that on the 21st May, 1856, he met or saw the plaintiff and Charles in Eutaw, and remarked to one or both of them, that the defendant wanted to trade off or swap the boy Burrell for another negro; that the parties met at his house the next day, and agreed on the terms of the contract, and then went back to the defendant's to conclude the trade, by giving bills of sale, and making a delivery of the respective slaves; that he did not accompany them, and was not present when the trade was consummated. On cross-examination of said witness, plaintiff's counsel asked him, whether the said contract between plaintiff and defendant was a sale or an exchange of the negroes; and the witness answered the question, by restating substantially what is above related. To this question and answer, each, the defendant objected, and reserved an exception to the overruling of his objections."

"The court thereupon charged the jury as follows:

"1. That [if] there was proof tending to show that the slave Burrell died of dysenteric typhoid fever, and that he had said fever, or the seeds of said disease, lurking in his system at the time of the execution of the paper purporting to be a bill of sale from the defendant to the plaintiff, this would be such an unsoundness as was covered by the warranty contained in said bill of sale.

"2. That a negro-trader was a person who engaged in the traffic of slaves as a business or employment, but that it was not necessary that this should be his chief or only employment; and therefore, if they should believe from the evidence that the plaintiff, whilst in the employment of the said Charles, merely sold one negro for him, in his absence, and exchanged another for the slave Louisa, and

afterwards purchased said Louisa from said Charles, as stated by said Charles, and then brought said Louisa to Greene county, and traded her off to the defendant, under the circumstances, and for the purposes testified to by said Charles,—this would not necessarily constitute the plaintiff a negro-trader, but the jury should look to these facts, in connection with the other facts in the case, as circumstances from which to determine whether or not the plaintiff was a negro-trader, within the meaning of the law as defined by the court.

"3. That although they might believe from the evidence that the plaintiff was a negro-trader at the time of the trade between himself and the defendant, the law did not prohibit him from swapping or exchanging the girl Louisa for the boy Burrell; and that if they believed from the evidence that the plaintiff fixed the price of his slave at $1200, and the defendant fixed the price of her slave at $1,000, and that this was done merely to ascertain the difference which the defendant should pay the plaintiff between the slaves, this would be an exchange, and not a sale: on the contrary, if they believed from the evidence that the plaintiff fixed said price on the slave Louisa, that the defendant agreed to take her at the price so fixed, and that the defendant fixed the price on the slave Burrell, and that the plaintiff agreed to take him, at the price so fixed, in part payment for the girl Louisa,—this would be a sale, and not an exchange.

"4. That whether the trade between the plaintiff and the defendant was a sale or an exchange, was a question to be determined by them, not by the name given to the transaction by the parties or witnesses, but from the facts and circumstances testified to by the witnesses, or shown by the evidence in the case.

"5. That although they might believe from the evidence that the slave Burrell was unsound at the time of the trade between the plaintiff and the defendant, yet, if they believed from the evidence that the plaintiff was at the time a negro-trader, and sold the slave Louisa to the defendant, and received the slave Burrell in part payment for her—then they should find a verdict for the defendant."

To all of these charges the defendant excepted, and she now assigns them as error, together with the adverse rulings of the court on the evidence.

WM. P. WEBB, with HERNDON & INGE, for appellant.
JOHN F. VARY, contra.

STONE, J.—A portion of the answer of the witness McLain, to the 7th interrogatory in chief, was stricken out on motion, made for the first time during the trial. The argument here made in support of the ruling of the court is, that the answer was not responsive to the interrogatory. When the answer of a witness is, as in this case, legal evidence, and the only objection is that it is not responsive to any interrogatory propounded, such objection can not be made during the trial.—McCreary v. Turk, 29 Ala. 244; Saltmarsh v. Bower, 34 *ib.* 613.

[2.] The question propounded to the witness Charles on cross-examination, and objected to, was illegal. It inquired for the *motive* of Cureton in disposing of the slave Louisa. The witness could not possibly know the motive which influenced the action of another person.—Whetstone v. Bank at Montgomery, 9 Ala. 875.

[3.] The question put on cross-examination to the witness Watson, elicited no illegal evidence. We need not, therefore, inquire whether the objection to it should have been sustained.

[4.] In the charge to the jury, we find no error of which the appellant can complain.—Williamson v. Berry, 8 How. U. S. 544.

Reversed and remanded.