# Yarbrough *et al. v.* The State.

## Indictment for Burglary.

1. *Burglary; province of cross-examination; what questions admissible.*—On a trial under an indictment for burglary in which two defendants are charged with having stolen a quantity of meat from a smoke-house, where a witness who corroborates the testimony of the owner of the meat as to overhearing on a certain night a conversation between the defendants respecting the division of the meat, details on his direct examination the places he went to and his movements on the night the conversation between the defendants was overheard, it is permissible on the cross-examination of such witness for the defendant to ask him questions as to the reasons for the movements so described by him.

2. *Same; admissibility of evidence.*—On a trial under an indictment for burglary, where it is shown that certain meat alleged to have been stolen from a smoke-house burglarized, consisting of two hams and two shoulders was found at the house of one of the defendants two weeks after the burglary, the fact that a third person loaned such defendant bulk pork a few days before the discovery of said stolen meat in the defendant's house, is irrelevant and inadmissible ; and it is not competent for the defendant to prove such fact.

3. *Same; same; hearsay evidence.*—On a trial under an indictment for the burglary of a smoke-house from which meat was stolen, where a witness testifies that, three days before certain of the alleged stolen meat was found at the defendant's house, defendant's wife came to the witness's house and got meat which she said witness's husband had promised to let the defendant have ; that witness loaned her some meat corresponding in quantity and kind with that discovered at defendant's house, an offer to prove by such witness that her husband

[Yarbrough *et al.* v. The State.]

had told her to let the defendant have some meat if he came for it, is properly disallowed ; such evidence being merely hearsay.

4. *Same; same.*—In such a case it is not competent to prove by a witness that three days before the discovery of the alleged stolen meat in the defendant's house, the defendant's wife passed said witness while he was at work, and in answer to a question, said that she was going to a neighbor's house after some meat, and that after a short time she returned with a bundle which had the appearance of having meat in it, and in answer to a question by the witness, said she had gotten the meat from a neighbor. · While the statement that she was going to a neighbor's house for meat, and that she returned with a bundle, as described, may have been competent evidence, her statement of a past fact, that she had gotten the meat, was not competent and rendered all of the evidence offered inadmissible.

5. *Same; charge to the jury.*—On a trial under an indictment for burglary in which the State's evidence tended to show that certain meat found in the house of one of the defendants had been stolen from the burglarized smoke-house, but the evidence on the part of the defendant tended to prove that the meat so found had been obtained by the defendant from a third party a few days before the discovery of the meat, and there was no evidence from which it could be legitimately inferred that the stolen meat had been carried to the house of said third person and subsequently obtained therefrom by the said defendant, and no evidence tending to connect such third party with the alleged crime, a charge which instructs the jury that, if they believe from the evidence that the defendant got the meat discovered at his house from such third person, he should not be convicted, is, when referred to the evidence in the case, a correct charge and should have been given.

6. *Charge to the jury ; sufficiency of evidence.*—In a criminal case, a charge which instructs the jury that one charged with the commission of an offense against the law is presumed to be innocent until his guilt · is established, and the evidence sufficient to convict should be so convincing as to lead the mind to the conclusion that the defendant can not be guiltless, and if upon the whole evidence the guilt of the defendant is not established beyond a reasonable doubt, he must find the defendant not guilty, is properly refused ; such charge being objectionable, both on account of being argumentative and because it seeks too high a degree of proof.

APPEAL from the Circuit Court of Limestone.

Tried before the Hon. H. C. SPEAKE.

The appellants, Jordan Yarbrough and John Mitchell, were indicted, tried and convicted for burglary. The facts of the case are sufficiently stated in the opinion.

In addition to the charge copied in the opinion, the defendant requested the court to give to the jury the following written charge, and separately excepted to the

court's refusal to give both this charge and the charge copied in the opinion: (2.) ''I charge you that every one charged with the commission of an offense against the law is presumed to be innocent till his guilt is estab-. lished, and the evidence sufficient to convict should be so convincing as to lead the mind to the conclusion that the defendant can not be guiltless, and if upon the whole evidence the guilt of the defendant is not established beyond a reasonable doubt, you must find the defendant not guilty.''

McCLELLAN & McCLELLAN, and J. J. TURRENTINE, for appellants.—The court should have allowed the defendants on cross-examination to question the witness Wash Matthews as to his reasons or motives for his travel, conduct and whereabouts on the night referred to.—3 Rice on Evidence, 337-339 ; 2 Rice on Evidence, 583-589 ; 1 Greenl. on Evidence, 446 ; *Thomason v. Dill*, 30 Ala. 444 ; *Griffin v. State*, 90 Ala. 596.

The declarations of Jordan's wife to Harrison Allen and the instruction of Dick Sloss to Hulda Sloss are all competent evidence which ought to have been admitted. The fact that Jordan's wife got the meat and that Hulda Sloss let her have it were legal evidence ; and we understand the doctrine to be that what was said in reference to such facts at or about the time they occurred are certainly a part of the *res gestae*.—3 Rice on Evidence, 122-131 ; 1 Rice on Evidence, 375-377 ; 1 Greenl. on Evidence, 108 ; 7 Amer. & Eng. Encyc. of Law, 52 ; 21 Amer. & Eng. Encyc. of Law, 99 *et seq*. Besides, it would be entirely proper for the appellants to show by the witness, Hulda Sloss, that she was authorized to do what she did, in order to make out their ''reasonable account'' of their possession of the meat alleged to have been stolen.

Under the evidence in this case the first charge requested by the defendants asserted a correct proposition and should have been given. The second charge asserted a correct proposition and should have been given. The word ''guiltless'' is modified in this charge by the subsequent clause therein, and such modification rendered the charge unobjectionable.—*Webb v. State*, 106 Ala. 53.

WILLIAM C. FITTS, Attorney-General, for the State.— The second charge refused to the defendant contains the

expression "that the defendant can not be guiltless," which was directly repudiated in the case of *Webb v. State*, 106 Ala. 53 ; *Allen v. State*, 111 Ala. 81.

HEAD, J.—Appellants were tried for burglary of a smoke-house, and convicted. The house entered belonged to Isom Malone. The burglary occurred on the night of Saturday, March 28, 1896. His testimony tended to show that twelve pieces of bacon, consisting of hams and shoulders, particularly described, were stolen ; that the next morning he followed tracks from the place of the burglary, a distance of some two miles north-west of his house ; that the defendants lived on the Lucas Ferry Road over a mile north-east of his house ; that on the next Saturday night, a while after dark, he went to the house of the defendant, John Mitchell, for the purpose of eavesdropping, that he might find out something about his lost meat ; that just as he got to the gate of the house, his brother-in-law, Wash Matthews, who lived a mile or more from there, happened to come up ; that both of them took their positions near the house, at different places, when they heard the two defendants in a conversation or quarrel about a division of the meat, using language which tended to inculpate both of them. He testified that he did not know how Wash came to be there, nor where he had been. Witness then went back home, Wash going to preaching at the house of John's father, Dan Mitchell, about four hundred yards off. Defendant Jordan Yarbrough lived up stairs in Dan Mitchell's house.

His testimony further tended to show that on the following Saturday he, with a constable, and a search warrant, went to the house of defendant, Jordan, and found in a box, in a room occupied by him and his family, two hams and two shoulders which were a part of his lost meat and corresponded well with meat he had just lost ; that Jordan stated that he had not seen the meat and did not know anything about how Isom's meat came there, and if it was his meat that his, Jordan's, wife and brother brought the meat there Wednesday before, he having bought four such pieces of Dick Sloss, his step-grandfather ; that no search was made of defendant, John's house, because he was not at home, his house being locked up.

[Yarbrough *et al.* v. The State.]

Said Wash Matthews was introduced by the State and testified that he lived about a mile south of the houses of the defendants. He corroborated Isom as to their meeting at the house of defendant, John Mitchell, and hearing the conversation or quarrel testified to by Isom. As to his movements that night he said he started from his home on foot to Mr. Stewart's store where the Huntsville and Brown's Ferry and Lucas Ferry roads cross about a mile north of defendant's house; that on his way he stopped at Dan Mitchell's house a half hour, while there, going up stairs in the room occupied by Jordan Yarbrough; that after leaving there he went on until he had gotten within about a quarter of a mile of Mr. Stewart's store when he stopped, turned around and went back till he came to the house of the defendant, John Mitchell, on the Lucas Ferry road, where he met up with Isom, when they heard the quarrel, etc., which took place immediately after he took his position at the house; that he then went about four hundred yords from there back a second time to the house of Dan Mitchell, the father of John, where religious services were going on and that he remained at the services till they broke up about twelve o'clock that night. There was evidence on the part of the defense tending to disprove these movements on the part of Wash, and that he went to the religious services very early that night and remained there until twelve o'clock.

On cross-examination the defendant's counsel asked the witness three several questions to which the court sustained objections, and to which the defendants severally excepted: First, Why he went by Dan Mitchell's house first that night? Second, Why he turned back after he had gotten near Mr. Stewart's store? and third, Why he stopped at the house of the defendant, John Mitchell, on that night? The witness, in fact, answered the second question by stating that he thought the store was closed, and he wanted some excuse so that he could satisfy his wife. It was important to the defendants to sift the testimony of the witness, Wash, in reference to his movements on the night in question and have the jury informed, in an appropriate way, of his reasons for the movements the witness had described on his direct examination. Whilst as a general rule unexpressed motives of witnesses can not be called for, the rule ap-

plies more particularly where a party seeks, in his own behalf, to prove by his own or his witness' testimony, the secret, unexpressed motives or purposes of the person testifying. On cross-examination, where great latitude is allowed, we think such questions as were asked in the the present case ought to be allowed.

It was not relevant or competent for the defendant to prove by Sol Mitchell that on Monday before the meat was found in Jordan Yarbrough's house, he loaned Jordan six pounds of bulk pork, to be paid back in a few days out of meat which Jordan said he was to get from Dick Sloss.

The defendants introduced Hulda Sloss, the wife of said Dick Sloss, and she testified that on Wednesday before the meat was found at Jordan's house, Jordan's wife came to her house after some meat which she said Dick Sloss had promised to let Jordan have ; that thereupon she laid out four pieces, two hams and two shoulders for Jordan ; that Jordan's wife being a weakly woman did not take but one piece home with her ; that late in the evening of that day witness sent the other three pieces to Jordan by her son, John Sloss. Her testimony also tended to show that the meat found at Jordan's house was the same she had let him have.

In connection with this the defendants' counsel proposed to prove by the witness that her husband, on going away from home on the Wednesday before the meat was found in Jordan's house on Saturday, told her to let Jordan have some meat if he came or sent for it in his absence, which she did. This was mere hearsay, and was properly disallowed.

The defendants proposed to prove by their witness, Harrison Allen, that on Wednesday the defendant's, Jordan's wife, passed by him at his work, going the usual route from her house to Dick Sloss's ; that in answer to a question by him as to where she was going, she said, to Dick's, after some meat ; and that, after a while, she came back by him with a bundle about the shape of a ham or shoulder wrapped up on or under her arm, when in answer to a question by him as to whether she got the meat, she said she got a ham from Dick. This testimony was refused by the court against the exception of the defendant.

It may be that the statement of Jordan's wife that she was

going to Dick's after meat and that she afterwards came back with a bundle such as above described, were competent evidence, but her statement of the past fact that she had gotten the meat from Dick Sloss was not competent.    Past facts or transactions declared by a person cannot be a part of the' *res gestæ* of any act.    This objection rendered the·whole exception unavailing.

It was not competent for the defendant to prove the contract under which he let Jordan have the meat; nor that Jordan was hired to Mr. Stewart at $8 per month; nor that Dick Sloss desiring to go to a convention applied to Jordan for half of his month's wages to be repaid in meat and that Jordan consented to this, advanced the money and thus obtained the meat.

The defendants requested of the court the following charge : "I charge you, gentlemen of the jury, that if you believe from the evidence, that the defendant, Jordan Yarbrough, got the meat from Dick Sloss, you must find him not guilty."    This charge the court refused, and the defendant Yarbrough excepted.

There was evidence tending to show that the meat found in Jordan Yarbrough's house had been obtained by him from Dick Sloss on Wednesday preceding the discovery.    If that evidence was true it necessarily followed, under all the facts of this case, disclosed by the bill of exceptions, that the meat so found was not the meat which had been stolen at the time of the burglary. There was no evidence from which it could be legitimately inferred that the stolen meat was carried to Dick Sloss's house and thereafter obtained by Yarbrough from Dick Sloss.    So that, the proposition of the charge, when referred to the evidence in the case, that if Yarbrough got the meat from Dick Sloss he should not be convicted, was correct.    The charge ought to have been given.

The second charge requested by the defendant Yarbrough was objectionable on account of being argumentative, and of exacting too high a degree of proof. *Webb v. The State*, 106 Ala. 53 ; *Allen v. The State*, 111 Ala.·80.

It is unnecessary to pass upon the exception in reference to the reception of the verdict, as it is not probable that the question will arise again.    The same as to

[Koch v. The State.]

the remark made by the presiding judge, as to courses, distances, etc.

Reversed and remanded.