(103 So. 553)

GADSDEN GENERAL HOSPITAL v. HAMILTON. (7 Div. 475.)

(Supreme Court of Alabama. March 26, 1925.)

1. Evidence ⬤�longrightarrow151(1)—Testimony of plaintiff as to nightmares and nervousness after detention against will in hospital held not improperly admitted.

In action for damages for detention of patient in hospital for failure to pay bill, her testimony that after her experience she had nightmares, and got excited and real nervous when at work, held not improperly admitted,

since testimony concerned physical status and manifestations thereof, and therefore was not within rule that party may not testify to his uncommunicated mental status; that being matter of inference from circumstances by jury.

2. Evidence ⬤⟶471(13)—Testimony of another as to plaintiff's relative condition before and after detention against will in hospital held properly admitted.

In action by patient for damages for detention against will in hospital, testimony of mother as to relative condition before and after alleged wrong held proper.

3. Witnesses ⬤⟶268(1) — Cross-question whether bill for which patient was detained in hospital against will was ever paid held properly disallowed.

In action by patient for detention in hospital for failure to pay bill, defendant's cross-question to plaintiff's mother, "Did you ever pay it?" was properly disallowed.

4. Evidence ⬤⟶121(11)—Statement that hospital patient was detained for failure to pay held admissible as part of res gestæ.

Testimony of officer, serving writ of habeas corpus seeking release of patient detained in hospital, that sister in charge said reason was that bill was not paid as promised, held admissible in patient's action for damages, as part of res gestæ of her then detention.

5. Evidence ⬤⟶244(7)—Statement that patient was detained for failure to pay bill admissible as admission of wrong charged.

Testimony of officer, serving writ of habeas corpus, seeking release of patient detained in hospital, that sister in charge said reason was that bill was not paid as promised, held admissible in patient's action for damages as admission of wrong complained of, coupled with statement of justification that did not justify.

6. False imprisonment ⬤⟶36—$1,500 held maximum allowable for detention.

$1,500 held maximum allowable to patient for detention in hospital for 11 hours for failure to pay bill, where verdict impliedly acquitted defendant of malice, and where it was apparent from evidence that nervous condition and nightmares were due to disease, rather than wrong complained of.

Appeal from Circuit Court, Etowah County; O. A. Steele, Judge.

Action for damages by Nellie Hamilton against the Gadsden General Hospital for unlawful detention of plaintiff. Judgment for plaintiff, and defendant appeals. Affirmed conditionally.

O. R. Hood and Dortch, Allen & Dortch, all of Gadsden, for appellant.

It was error to permit plaintiff and her mother to testify to plaintiff's mental state or condition, and a physical ailment to which they were not competent to testify. Standard Oil Co. v. Humphries, 209 Ala. 493, 96

So. 629. Objection to the question calling for what the manager of the hospital told the officer serving the writ of habeas corpus should have been sustained. A. G. S. v. Hawk, 72 Ala. 117, 47 Am. Rep. 403; Sou. Ry. v. Fricks, 196 Ala. 61, 71 So. 701. The verdict was excessive, and motion for new trial should be granted. Code 1923, § 9518; Standard Oil Co. v. Humphries, supra; Fleming & Hines v. L. & N., 148 Ala. 527, 41 So. 683; Wolf v. De Lage, 150 Ala. 445, 43 So. 856; Talley v. Whitlock, 199 Ala. 36, 73 So. 976.

J. M. Miller, of Gadsden, for appellee.

The manager of the hospital was the vice principal of defendant, and her acts were the acts of the principal. 4 Mayfield's Dig. 528. The verdict was not excessive. 4 Michie's Ala. Dig. § 104; Bachelder v. Morgan, 179 Ala. 339, 60 So. 815, Ann. Cas. 1915C, 888.

SAYRE, J. Plaintiff's (appellee's) case was that, having been for some time a patient at defendant's hospital, she was detained against her will when she desired and attempted to leave. The plea was in short by consent, and amounted to nothing more than the general issue.

[1] In the trial court, plaintiff, testifying as a witness in her own behalf, was permitted to say that she was not nervous, nor had she "nightmares," nor did she "seem to be nervous," before she went to the hospital, but that, upon her return home after her experience there, she had "nightmares," was very nervous, and got excited and real nervous when at work. Appellant cites Standard Oil Co. v. Humphries, 209 Ala. 495, 96 So. 629, a case of malicious prosecution, where it was said, arguendo, that:

"Under the rule prevailing in this state plaintiff would not have been allowed to testify that he suffered mental anguish, that he was nervous, or that he was frightened."

The question at issue in that case, raised by defendant's charges requested, was whether plaintiff should be allowed to recover damages for nervousness or fright. The nervousness or fright for which damages were claimed in that case was suffered, if at all, during plaintiff's detention. The court concurred in the opinion then expressed by the present writer that it was for the jury to say upon the whole evidence whether plaintiff was entitled to recover for mental anguish, "including, as we think [thought], nervousness and fright." Many cases had been cited in Western Union v. Cleveland, 169 Ala. 131, 53 So. 80, Ann. Cas. 1912B, 534, to the proposition that in the courts of this state a party may not testify that he suffered mental pain and anguish. It had been well settled in this court, to state the proposition in a somewhat broader form, that a party may not testify to his uncommunicated mental status; such

status, when relevant, being a matter of inference, to be determined from the circumstances of the case by the jury. McCormick v. Joseph, 77 Ala. 240. This is the rule we had in mind in Standard Oil Co. v. Humphries. "Nervous" has various meanings. In the present case it is understood that the witness was speaking of her physical status before and after the wrong complained of, and some of its manifestations, and, while the court would not depart from its long-settled policy, nor too narrowly "divide 'twixt south and southwest side," its opinion is that the testimony in question was not erroneously admitted. Bradley v. Lewis, 211 Ala. 264, 100 So. 324.

[2] More obviously were the rulings of the court correct which allowed plaintiff's mother to testify to plaintiff's relative condition before and after the alleged wrong. It has always been the rule to permit a witness to state the appearance of a person; that is, what such appearance indicated. Many examples might be cited. The following will suffice: Carney v. State, 79 Ala. 14; South & North R. R. v. McLendon, 63 Ala. 266; Thornton v. State, 113 Ala. 43, 21 So. 356, 59 Am. St. Rep. 97.

[3] Defendant's question to Mrs. Nunnally, plaintiff's mother, on cross-examination, "Did you ever pay it?" referring to the hospital's bill for services rendered in caring for plaintiff during her illness, was properly disallowed. The fact that plaintiff's bill, or the witness' bill, had not been paid, afforded no sort of excuse for detaining plaintiff against her will.

[4, 5] Sister Fidelis was in charge of the hospital. When a writ of habeas corpus seeking plaintiff's release was served on Sister Fidelis, the officer serving the writ testified that:

"She said the reason was [meaning the reason why plaintiff was detained] she had not paid her debt as she had promised. Her parents had not paid, and she was told she had better stay until they brought them a check."

There was no error in admitting this testimony. Sister Fidelis was the hospital's alter ego; she was in the discharge of her duties as manager; her statement was not merely the statement of a past transaction; it was of the res gestæ of plaintiff's then detention; it was an admission of the wrong complained of, coupled with the statement of matter of justification that did not justify. There was no error. Bank of Phœnix City v. Taylor, 196 Ala. 665, 72 So. 264.

[6] The damages assessed were excessive. The jury returned a general verdict; this, under the court's instructions, amounting to an acquittal of the malice charged in the eleventh count of the complaint. The facts, briefly stated, are that plaintiff had been in defendant's hospital for about three weeks, during which time she had undergone an op-

eration for exophthalmic goiter. The general and specific effects of her trouble do not entirely belong to the arcana of medical science. Conceding the general correctness of the jury's verdict as to plaintiff's right of action—and that was, under the evidence in this cause, peculiarly a question for the jury —plaintiff, at the end of the period mentioned, desired to go home, but was told that she could not leave the hospital until her bill was paid. Under these conditions and in this manner she was detained from 9 o'clock a. m. until about 8 p. m. of the same day, when she was sent home in charge of a nurse. Plaintiff testified that in the meantime one of the sisters in charge at the hospital threatened to tie her to her bed unless she remained quiet, and thereupon locked her in her room; but the great—we will say overwhelming—weight of the evidence was that no such threat was made, that plaintiff was not locked in her room, and suffered no wrong or indignity, except that she was told she could not leave until her bill was paid, that she passed the period of her detention quietly on her bed in her room, the door of which was open, being detained—as the jury found, and as they were authorized to find under the evidence—merely by force of defendant's command that she should not go until her bill was paid. That plaintiff suffered a wrong for which she should be compensated must, in the circumstances, be conceded. But the jury, as we have said, acquitted defendant of malice. Plaintiff's wrong, then, must be referred to defendant's misapprehension of the propriety and the right of the situation presented—at least, malice cannot be predicated of what it did. It cannot be doubted that plaintiff was sick and nervous at the time of her detention, and this fact was due to be taken into consideration in the assessment of compensatory damages; but the court feels assured, upon consideration of the expert medical testimony, that the nervousness, the excitement when at work, and the "nightmares" from which plaintiff suffered after her return home, were the result of her disease, not of any violence or the wrong done by defendant or its agents. While, upon the whole evidence, the court cannot refer the award of damages to bias, prejudice, or passion, we feel constrained to refer it to the jury's mistaken estimate of the proprieties of the case. In these circumstances, the court has decided that the damages be reduced to a reasonable maximum, failing the acceptance of which by plaintiff, a reversal of the judgment will be ordered. The court is of opinion that the sum of $1,500 is allowable under the circumstances. To this sum, if accepted, interest is to be added from the date of the judgment in the circuit court, but without the penalty of 10 per centum, as in the case of Standard Oil Co. v. Humphries, supra.

The judgment will be reversed, and the cause remanded, unless the plaintiff, within 30 days, shall remit all damages in excess of $1,500; but, upon such remittitur being made and entered of record, the judgment as so reduced will be affirmed.

Affirmed conditionally.

ANDERSON, C. J., and GARDNER and MILLER, JJ., concur.