27 So.2d 241

## McGUFF v. STATE.
### 6· Div. 423.

Supreme Court of Alabama.
Aug. 2, 1946.

Pennington & Tweedy, of Jasper, for appellant.

Wm. N. McQueen, Atty. Gen., and Jas. T. Hardin, Asst. Atty. Gen., for the State.

LIVINGSTON, Justice.

Appellant was tried in the Circuit Court of Walker County, Alabama, for the offense of murder in the first degree, and upon his conviction of murder in the second degree his punishment was fixed at imprisonment in the penitentiary of Alabama for a period of thirty years, and he has appealed.

It is undisputed that on or about April 14, 1945, the appellant shot and killed one Arthur Russell with a twenty-two Winchester rifle, near the town of Cordova in Walker County, Alabama. Events leading up to the fatal shooting are not clearly disclosed by the record. It does appear, however, that the fatal difficulty had its inception in and grew out of a dice game. Following the dice game, the appellant and one Lecil Short, apparently the winners, while kneeling in the road, counting money, were confronted by a group consisting of Horace Dodd, Henry Poore and the deceased, Arthur Russell. There were charges that crooked dice had been used, and a scuffle or fight ensued. Appellant testifying in his own behalf contended that in this fight he was attacked by the deceased, and that money was forceably taken from him against his will by Russell. The State's testimony tended to show that the fight was between Horace Dodd and Lecil Short, and that following the fight Dodd and Short agreed to forget the matter, and that the group proceed along the road together, and that about this time appellant and deceased became engaged in an argument concerning union affairs and vacation pay at the local mine Whatever the true facts may be as to the difficulty and its cause, appellant left the group and went to the home of Ruth Carson located near by, and attempted to borrow a gun, telling Miss Carson that he wanted the gun to kill a rabbit. Upon being informed by Miss Carson that she had a gun but no shells, appellant went to the home of Estelle Williams, some two or three hundred yards from the place where Russell was killed, and obtained a twenty-two Winchester rifle, telling Mrs. Williams that he wished to kill a gopher rat. Upon obtaining the rifle appellant returned to the place he had left the group. Poore and Short had gone, and deceased and Dodd were seated alongside the road. The testimony is conflicting concerning what took place immediately preceding the shooting. Dodd's testimony for the State tended to show that as appellant came down the road Russell arose from a sitting position by the side of the road, and that about the time Russell reached an upright or standing position, appellant was thirty or thirty-five steps away from him: that neither said anything, and that appellant shot deceased

from that distance. Appellant testified, in substance, that as he approached Dodd and Russell they both arose and that Dodd started to run away, but turned and came back, and that both started toward him; that he twice told Russell to stop, but that he kept coming toward him, and was coming rapidly, and put his hand in his pocket; that he shot deceased when he was about fifteen feet away, and while still advancing toward him with his hand in his pocket.

Deceased was shown to be a man weighing around one hundred and sixty pounds, physically strong, although it was shown that, owing to a prior accident, one arm was not quite as strong as the other. Appellant was shown to be a man weighing between one hundred and thirty and one hundred and thirty-five pounds. His right arm had been amputated about two inches below the elbow years ago. His feet had been badly burned years ago, with some of the toes burned off, and he walked or ran with some difficulty.

The record is replete with exceptions to rulings of the trial court. As the cause must be reversed, we will not give special consideration to each exception in turn, but will consider those vital to a retrial.

The trial court charged on self-defense, but refused all efforts of appellant to introduce evidence of deceased's character for peace and quietude; and to introduce evidence of prior difficulties between appellant and deceased, and of communicated threats by deceased against appellant. The trial court also refused to charge on manslaughter in either decree. And it refused to permit appellant to testify that it was his intent or purpose, in returning to where he left deceased in the road, to talk with deceased about getting his money back, and in the event deceased refused to return it, to arrest deceased for the felony committed in taking it from him by force and against his will.

We think this ruling, and the consequent lack of evidence for the appellant as to such intent or purpose in all probability prompted the other rulings of the trial court mentioned above.

It cannot be questioned that appellant's intent or purpose in returning to the place where he left deceased on the road was a material inquiry. If in truth appellant's money had been taken from him by force and against his will, he, or any other private person, had a lawful right to pursue the thief for the purpose of arresting him, and of recapturing the money so taken. Section 158, Title 15, Code of 1940. And under the circumstances, he is not required to inform the party of his purpose to arrest him, as in ordinary cases. Section 159, Title 15, Code of 1940. And he could, if resisted, repel force with force, and need not give back or retreat. If under such circumstances, the party making resistance is unavoidably killed, the homicide would be justifiable. If appellant's purpose was honestly to make an arrest, he would not for this reason be chargeable with the imputation of having wrongfully brought on the difficulty; but the law would not permit him to resort to the pretense of arrest, as a mere colorable device beneath which to perpetrate crime. Storey v. State, 71 Ala. 329; Gibson v. State, 193 Ala. 12, 69 So. 533.

Appellant's intent or purpose being material, can he state what that intent or purpose was? It must be conceded that a large number of decisions of this Court dealing with this question, hold that a witness may not testify to his own intent or other state of mind, notwithstanding the fact that the witness's intent or other state of mind is material. It is not the law in other jurisdictions that a witness is disqualified to testify to his own intent or other state of mind, when such intent or state of mind is material. Wigmore on Evidence, 3d Ed., §§ 581 and 1966; Jarrell v. Young, Smyth, Field Co., 105 Md. 280, 66 A. 50, 23 L.R.A.,N.S., 367. But it should be distinctly noted that those jurisdictions which permit a witness to testify to his own mental state receive such testimony only when it is material, and if for any reason of substantive law, the witness's mental state is not material the mental state is not provable at all. It is generally held that a witness may not testify as to what his state of mind or actions would have been under a supposition or non-existent state of facts, that is to say, a state of facts different from those which he testified did exist.

The history and development of this rule of exclusion in Alabama deserves some consideration. In Barnett v. Stanton & Pollard, 2 Ala. 181, 182, it was said that a mere assertion of value by a seller is not a warranty, being "mere matter of opinion, not knowledge." This case and its successors, Williams v. Cannon, 9 Ala. 348, 350, and Bradford v. Bush, 10 Ala. 386, 390, which had required the jury to determine the question whether the language was a mere assertion or something more, were then taken, in Sledge v. Scott, 56 Ala. 202, 207, as involving this consequence, that on such a matter of opinion no witness, even the purchaser, could speak, and the consequence was reached that a buyer could not testify that "he relied on the seller's representations as to soundness, and would not have made the purchase but for the representations." On the same theory, similar evidence was rejected in Baker v. Trotter, 73 Ala. 277, 281. Other early cases supporting the development of the rule of exclusion are: Mobile Life Ins. Co. v. Walker, 1877, 58 Ala. 290; Sternau v. Marx, 1877, 58 Ala. 608; Herring v. Skaggs, 1878, 62 Ala. 180, 34 Am.Rep. 4; Wheless v. Rhodes, 1882, 70 Ala. 419, 420; Burns v. Campbell, 1882, 71 Ala. 271; Brewer v. Watson, 1882, 71 Ala. 299, 46 Am.Rep. 318; Burke v. State, 1882, 71 Ala. 377; Whizenant v. State, 1882, 71 Ala. 383; Baker v. Trotter, 1882, 73 Ala. 277; Wilson v. State, 1883, 73 Ala. 527; McCormick v. Joseph, 1884, 77 Ala. 236; Stewart v. State, 1885, 78 Ala. 436; Brown v. State, 1885, 79 Ala. 51; Alabama Fertilizer Co. v. Reynolds, 1885, 79 Ala. 497.

In Alabama Fertilizer Co. v. Reynolds, supra, the action was on a promissory note, plaintiff's claim of defendant's liability being that defendant held himself out as a partner of another who actually signed the note for the alleged partnership: plaintiff was disallowed to testify that he would not have sold the goods (which were the consideration for the note), except upon the strength of defendant's name. The Court said: "We do this because such testimony, in its nature is insusceptible of contradiction."

The cases noted above seem to have developed in Alabama the notion that a witness is disqualified to testify to his own state of mind, even though his state of mind is material. Many of our cases have since followed that rule, but we will not attempt to cite them here. They are collated in Wigmore on Evidence, 3d Ed., § 1966, and note thereto. They are also collated in an article prepared by Judge Russell McElroy, Presiding Judge of the Tenth Judicial Circuit of Alabama, and appearing in Vol. 1, Alabama Lawyer, p. 221.

In the development of the rule of exclusion a parallel line of decisions dealing with cases of illegal transactions and other acts, took the course of excluding evidence by one person however familiar with the transaction, of the intention of any other person, on the ground that "a witness can only depose to such facts as are within his own knowledge," and the intention of another person, "however strongly he might be justified in believing it to be as stated, he could not know, i. e., the requirement of a knowledge-qualification is wanting." Planters, etc., Bank v. Borland, 5 Ala. 531, 546 (testimony of an alleged fraudulent grantor as to the grantee's fraudulent intention). Some of these cases are: Peake v. Stout, 8 Ala. 647; Whetstone v. Bank, 9 Ala. 875, 886; Clement v. Cureton, 36 Ala. 120, 121–24; Sternau v. Marx, 58 Ala. 608; Adams v. Thornton, 82 Ala. 260, 263, 3 So. 20; Bailey v. State, 107 Ala. 151, 18 So. 234; Gunter v. State, 111 Ala. 23, 20 So. 632, 56 Am.St.Rep. 17. Other cases in this line are collected in Wigmore on Evidence, 3d Ed., § 1966, and notes.

A study of the decisions in which the rule of exclusion was developed indicates that the basis for excluding the testimony of a witness to his own mental state is that such testimony is "insusceptible of contradiction," and that a person's mental state is not a fact. It also seems clear that at times the Court has confused the matter of admissibility of a person's testimony to his own state of mind when material, with the rule that a person cannot because of a lack of knowledge testify to another's mental state, and with the rule that a witness may not testify what his mental state would have been in a suppositious set of circumstances, and with the rule that a witness's testimony to his own men-

tal state is not admissible when it is immaterial. Our cases dealing with this subject are conflicting and confusing.

It was said by Mr. Justice Somerville, in Disheroon v. Brock, 213 Ala. 637, 105 So. 899, 900, "It is not easy to reconcile all of our decisions" on this subject, and by Dean Wigmore (Wigmore on Evidence, 3d Ed., § 1966: "The foregoing supposed principles, i. e., disqualification by interest to speak of one's own intention, disqualification by lack of knowledge to speak of another's intention, and the Opinion Rule proper, have made hopeless confusion in the rulings in the courts of Alabama. By accepting in full the two former undesirable principles, by confusing them and the Opinion Rule, and by occasionally ignoring some precedents and misusing others, the law there has for long been in such a state that it is not only difficult to say what the rule is, not only is heterodoxy disseminated by the citation of such precedents in other courts, but it is hard to see, in view of the apparently comprehensive rule of exclusion, how any intelligent inquiry at all can there be conducted upon these points."

Dean Wigmore answers the argument of "insusceptibility of contradiction" as follows: "In the first place there is no precedent for it in the inherited common law; it is an attempt to create a rule without an analogy in the accepted doctrines of judicial rulings. In the next place, it assumes that there is no counter-evidence available, and yet asks that the only evidence which it assumes to be available shall be excluded—in other words, asks that a concededly proper issue be submitted to the jury with no evidence at all. In third place, its assumption is incorrect in fact, namely, that there is no other available and sufficient evidence of intent or motive by which the person's own testimony can be tested and checked; for the evidence from conduct and circumstances and from other's testimony is not only a permissible but a potent source of belief, and is amply sufficient to guard against falsification * * *. It is merely of a piece with all crude attempts to disqualify a witness by reason of interest—attempts which must stand discredited by the general repudiation

of that species of disqualification." Wigmore on Evidence, 2d Ed., § 581.

The argument that a person's mental state is not a fact is answered in Jacobi v. State, 133 Ala. 1, 32 So. 158, 162, where this Court quotes L. J. Bowen's phrase that "The state of a man's mind is as much a fact as the state of his digestion." It is also held in Robinson v. Greene, 148 Ala. 434, 43 So. 797, 800, that the plaintiff might testify that he was detained against his will. It was there said: "It was the statement of a fact capable of proof by no one so well as by the plaintiff, and was not the expression of an opinion, reason or conclusion."

There is no principle in the common law that evidence shall not be received because the party against whom it is offered has no refuting testimony. In this State witnesses are permitted to testify to physical pain, weakness, exhaustion, and the like, "although they may be subjective experiences, and cannot be directly contradicted." Whiddon v. Malone, 220 Ala. 220, 124 So. 516, 518; Whistle Bottling Co. v. Searson, 207 Ala. 387, 92 So. 657.

While our decisions leave the question under discussion unsettled, there seems to have developed certain fairly definite exceptions to the supposed rule of exclusion. A witness may be asked on cross-examination what his motive, reason, purpose, intent, etc., was in doing certain acts testified to by him. Thomason v. Dill, 1857, 30 Ala. 444; Ellis v. State, 1895, 105 Ala. 72, 17 So. 119; Yarbrough v. State, 1897, 115 Ala. 92, 22 So. 534; Linehan v. State, 1899, 120 Ala. 293, 25 So. 6; Hurst v. State, 1902, 133 Ala. 96, 31 So. 933; Montgomery v. State, 1911, 2 Ala.App. 25, 56 So. 92; General Acc. Fire & Life Assur. Corp. v. Jordan, 1935, 230 Ala. 407, 161 So. 240; Armour & Co. v. Cartledge, 1937, 234 Ala. 644, 176 So. 334.

Thus an accused in homicide, who testifies in his own behalf, may be asked on cross-examination "what did you get that pistol for?" and "How came you to put that pistol up when you went back?" The reason assigned is the great latitude allowed on cross-examination. Linehan v. State, 120 Ala. 293, 25 So. 6; Yarbrough

v. State, 115 Ala. 92, 22 So. 534; Hurst v. State, 133 Ala. 96, 31 So. 933. In Linehan v. State, supra, and Hurst v. State, supra, it is asserted that cross-examination may extend to inquiry as to motive, etc., for "relevant acts" testified to by the witness, there being no apparent intention to limit such inquiry to relevant acts testified to only on direct examination. Other cases do so limit the cross-examination. Williams v. State, 123 Ala. 39, 26 So. 521; Patton v. State, 197 Ala. 180, 72 So. 401. Other cases wholly disallow inquiry on cross-examination as to witness's state of mind. Western Union Tel. Co. v. Long, 148 Ala. 262, 41 So. 965; Kelly v. Hanwick, 228 Ala. 336, 153 So. 269; Hardin v. State, 8 Ala.App. 215, 63 So. 18; Valentine v. State, 19 Ala.App. 510, 98 So. 483; Cole v. State, 21 Ala.App. 601, 110 So. 913.

Another exception, though not always observed, is where upon cross-examination of a witness, he admits having made statements or having done acts which are contradictory of or discrediting to his testimony, he may testify on redirect examination what his motive or reason was for having made the statement or done the act, even though his testimony is only of an uncommunicated mental state. Campbell v. State, 23 Ala. 44; Johnson v. State, 102 Ala. 1, 16 So. 99; Anderson v. State, 104 Ala. 83, 16 So. 108; Henry v. State, 107 Ala. 22, 19 So. 23; Postal Tel. Cable Co. v. Hulsey, 115 Ala. 193, 22 So. 854; Sims v. State, 146 Ala. 109, 41 So. 413; Carwile v. State, 148 Ala. 576, 39 So. 220; Lowman v. State, 167 Ala. 57, 52 So. 638; Turner v. State, 224 Ala. 345, 140 So. 448; Pollard v. Rogers, 234 Ala. 92, 173 So. 881.

We think this exception has been so extended as to practically destroy the main rule, if the full force of the decision in Kinsey v. State, 204 Ala. 180, 85 So. 519, is recognized and applied. In that case an accused was permitted to testify that his reason for making a confession, which had been received against him as a part of the prosecution's main case, was that he was afraid of another, it being held that the present exception not only admitted a witness's testimony of his own mental state in explanation of his self-contradictions elicited on cross-examination, but also admitted a witness's testimony of his own mental state in explanation of admissions (confessions) proven by the testimony of others. Non-verbal conduct, proven by the testimony of others, according to analogous applications of this exception, would be subject logically to the same sort of explanation. Under Kinsey v. State, supra, surely an accused would be permitted to testify why he went to the scene of the homicide, or why he was armed. In the case of Inter-Ocean Casualty Co. v. Stallworth, 221 Ala. 71, 127 So. 850, it was there held in an action on an accident policy that the insured may testify that he did not purposely discharge the gun which shot off his hand.

But it is said in the majority opinion that the Stallworth case, supra, recognizes the general rule of exclusion, and is not in conflict with it. Further, it intimates that the majority of the Court are of the opinion that our cases are not in conflict. We are unable to reconcile the following holdings: In Dorlan v. Westervitch, 140 Ala. 283, 37 So. 382, 103 Am.St.Rep. 35, it is held that one claiming land by adverse possession may testify how much land he had been claiming to own, and nothing in the report of the case indicates that such testimony had to do with utterances or acts as to the method of claiming. In East Tenn. & V. & G. R. Co. v. Davis, 91 Ala. 615, 8 So. 349, it was held that a witness may not testify that he claimed certain lands unless his claim was communicated. In Emerson v. Lowe Mfg. Co., 159 Ala. 350, 49 So. 69, it was held that a person may testify that he swore out a warrant on his responsibility and not as the agent of another. But in Arnold v. Cofer, 135 Ala. 364, 33 So. 539, it was held that one could not testify that he bought a cow for another.

It has been held that a witness may testify that he confided in the representatives of the seller's agent in making a purchase. Herring v. Skaggs, 62 Ala. 180, 34 Am.Rep. 4. But not that he relied on the representations of the seller's agent in making a purchase. Tea-Java Coffee Co. v. Saxon China Co., 207 Ala. 33, 91 So. 885.

Some of our later cases have admitted a witness's testimony as to his reasons for his actions where the reason testified to consists of external happenings. Thus a witness may testify that she left the pullman car because the conductor informed her she would have to pay extra fare. Southern R. Co. v. Hayes, 194 Ala. 194, 69 So. 641. A witness may testify that he and another went to a certain place because of an agreement between them to do so. Such testimony is not only of the external happenings: it is testimony of a mental operation also.

A witness may testify that he was scared. Alabama Power Co. v. Edwards, 219 Ala. 162, 121 So. 543. Also, that he was nervous and excited, Gadsden General Hospital v. Hamilton, 212 Ala. 531, 103 So. 553, 40 A.L.R. 294, and that he was frightened. Moss v. State, 19 Ala.App. 85, 96 So. 451. But an accused may not testify that he was "in a fright". Stewart v. State, 78 Ala. 436. See, also, Western Union Tel. Co. v. Ryan, 206 Ala. 511, 90 So. 793, and Barbour v. Western Union Tel. Co., 210 Ala. 135, 97 So. 136.

In Hubbard v. State, 23 Ala.App. 537, 128 So. 587, 588, on a trial for kidnapping, the prosecution's witness was not allowed to testify that "she attempted to get away at Ewell, and that she attempted to get out of the car."

The case of State v. Tortomasi, a case almost identical with the case at bar, was tried in the lower court on the theory that a witness (the defendant Tortomasi) may testify as to his intention, purpose or mental state when material to the inquiry. The testimony having been admitted in the lower court, on appeal the question was not discussed because it was not necessary. See, Tortomasi v. State, 28 Ala.App. 499, 189 So. 901, certiorari denied 228 Ala. 253, 259, 189 So. 905.

We have made no attempt to cite all of our cases on the subject involved. There are many more. In our opinion, our cases are conflicting. If they constituted one long line of unbroken precedent we would be reluctant to overrule them. But interpreting them as we do, we are clearly to the conclusion that they obstruct rather than promote the ends of justice. We think that whatever is left of the rule should now be abandoned.

On this point, I therefore dissent as indicated, with Justice STAKELY concurring.

FOSTER, Justice (for the majority).

■ The situation here shown is the offer to prove by defendant what was his purpose in proceeding to a certain place to illustrate his conduct when he arrived there. But can it be shown by defendant's testimony to that effect on direct examination? In offering to testify that it was either to arrest a person who was then at the place or to get from him money which defendant claimed had been feloniously obtained from him by that person, he was proposing to explain the meaning of an act which he had done by testifying to his uncommunicated motive. We think this violates an established rule of evidence in this State. But it is said that this rule has not been uniformly observed, as in Inter-Ocean Casualty Co. v. Stallworth, 221 Ala. 71, 127 So. 850, 851, which it is claimed is a limitation or departure from it. But in that opinion it was observed that the question there was "not within the rule forbidding a witness on direct examination to give his secret motive or purpose in doing an act which he has done," citing Robinson v. Greene, 148 Ala. 434, 43 So. 797; Birmingham Ledger Co. v. Buchanan, 10 Ala.App. 527, 65 So. 667; Tennessee River Nav. Co. v. Walls, 209 Ala. 320, 96 So. 266. And it was said "The question called for a statement of fact: The description or designation of an occurrence; whether the gun was fired by him purposely; or whether it was discharged by accident."

The question we may also observe was not his secret purpose in firing the gun but whether he fired it as a voluntary act. If it was done by accident, he did not fire it, but it occurred as a result of a chain of circumstances. What he meant to say, we think, was that the firing of the gun was not his personal act but was the result of occurrences, not necessary to enumerate to be justified in saying that it was accidental. That is made manifest by the very words of the opinion in that case, as well as by

266

the authorities cited. In Robinson v. Greene, supra, the plaintiff in a suit for false imprisonment was properly allowed to testify that he was detained against his will. "That being the statement of a fact." It was said to be not different from an inquiry of whether he consented to be detained. The case of Birmingham Ledger v. Buchanan, supra, was to the same effect, and was based on the case of Robinson v. Greene, supra.

The case of Tennessee River Nav. Co. v. Walls, supra, also cited in the Stallworth case, supra, is in reliance on the other two cited. It was held proper to allow a witness to testify that he was ready to load and unload ties on the barge (not his intent or motive in doing or not doing an act).

The very language of the Stallworth case, supra, and those cited, show a full recognition of the rule of exclusion of evidence by a witness on direct examination of what his motive or purpose was in doing an act. The Alabama cases which support that rule of exclusion extend to the early judicial history of this State as shown by the citations in the instant opinion written by Mr. Justice LIVINGSTON, and in the citations in the notes to 22 Corpus Juris Secundum, Criminal Law § 647, pages 992, 993; 30 Corpus Juris 153, note 46; 16 Corpus Juris 566, note 22. It has been held that one cannot testify to his mental anguish. Western Union Tel. Co. v. Cleveland, 169 Ala. 31, 53 So. 80, Ann. Cas.1912B, 534; Walling v. Fields, 209 Ala. 389, 96 So. 471; Standard Oil Co. v. Humphries, 209 Ala. 493, 96 So. 629.

A distinction was drawn in Alabama Power Co. v. Edwards, 219 Ala. 162(13), 121 So. 543, between the physical fact and effect of fear as distinguished from mental anguish, but fully recognizing and reasserting the rule of exclusion of evidence by a witness on direct examination of his secret intent or purpose in doing an act.

A holding that the evidence here in question is admissible cannot be supported by the Stallworth case, supra, nor by any other Alabama case which we have examined.

We think that to do so is to overturn our cases numbering perhaps one hundred, and extending to our earliest judicial history.

We do not think the judgment should be reversed on account of the ruling of the court in refusing to permit appellant to testify that it was his intent or purpose in returning to deceased to talk about getting his money back, or in the alternative to arrest deceased for a felony committed in taking it from him by force and against his will. In this conclusion GARDNER, C. J., and BROWN, LAWSON and SIMPSON, JJ., concur with the writer. LIVINGSTON, J., expresses a contrary view as shown in his opinion, in which STAKELY, J., concurs, and dissent.

But we are all in agreement that there is error shown in another ruling of the court in sustaining objection to evidence offered by appellant.

Appellant testified in substance that as he approached Dodd and Russell (the deceased) both arose and that Dodd started to run away, but turned and came back, and that both started toward appellant; that he twice told Russell to stop, but that he kept coming toward him, and was coming rapidly and put his hand in his pocket; that he shot Russell when he was about fifteen feet away, and while still advancing on him with his hand in his pocket; that Russell weighed about one hundred and sixty pounds strong, though one arm was not so good. Appellant weighed about one hundred and thirty-five pounds, his right arm was amputated about two inches below the elbow, and his feet had been badly burned with the loss of some of his toes causing him to walk with difficulty.

The jury could infer from the evidence in the opinion of Justice Livingston, supra, that appellant went down the road to where Russell was on a mission justified by law, and for a peaceful purpose, to obtain his money claimed to have been forceably taken from him; and that when he approached Russell, the latter made an overt act and demonstration which the jury could infer was with a purpose to assault appellant before appellant shot him.

The court refused to allow appellant to introduce evidence of the character of Rus-

sell for peace and quiet, and of prior difficulties between them, and of threats made by him against appellant which had been communicated to him. We think that the situation thus disclosed required the court to allow him to make such proof.

■ Previous threats, whether or not communicated are under those circumstances, when self-defense is on the evidence sufficiently shown to justify its submission to the jury for the purpose of showing quo animo of such demonstration or attack, Roberts v. State, 68 Ala. 156; or to shed light upon who was the aggressor, Turner v. State, 160 Ala. 40, 49 So. 828; Beasley v. State, 181 Ala. 28, 61 So. 259, or to give color and character to such aggressive conduct; and this rule applies to evidence of illwill, and previous difficulties in general terms, Narrell v. State, 222 Ala. 145, 132 So. 47; Buffalow v. State, 219 Ala. 407, 122 So. 633, and to evidence of the bad character of deceased for peace and quiet. Rutledge v. State, 88 Ala. 85, 7 So. 335.

■ Whether threats made in connection with the circumstances of the difficulty are sufficient to justify the homicide is a question for the jury, and they cannot be excluded "if there is the slightest evidence tending to prove a hostile demonstration, which can be reasonably interpreted as placing the accused, at the time of the killing, in apparent imminent danger to life or other grievous bodily harm," but "this principle is confined to defensive measures. It furnishes no excuse or palliation for aggressive action, nor when the difficulty is brought on or sought by the accused." Beasley v. State, supra [181 Ala. 28, 61 So. 260]; Turner v. State, supra.

If appellant approached deceased with the intent of renewing their difficulty after "cooling" time, and not for the purpose of trying to obtain his money in a lawful way, and not for the purpose in good faith of arresting him for a felony which had been

committed, he would be the aggressor, and evidence of threats, former difficulties, illwill and bad character would not be justified. But if there is sufficient evidence to support a finding by the jury that a felony was committed by forceably taking appellant's money from his person or in his presence, and that he approached deceased in good faith either to recapture his money in a legal manner, or to arrest him for the felony, the evidence of threats and the like, is admissible. The claim of a purpose to act in a legal manner by appellant must not be a pretense or device to give legalized color to a purpose to renew the difficulty. Storey v. State, 71 Ala. 329 (13 and 14); Beasley v. State, supra; Gibson v. State, 193 Ala. 12, 69 So. 533.

We think there is sufficient evidence on the basis of the foregoing principles to require the court to allow evidence of threats, former difficulties, illwill, bad character for peace in respect to deceased. For this reason, the judgment must be reversed and the cause remanded.

Reversed and remanded.

All the Justices concur in the reversal.

BROWN, Justice (concurring specially).

The rule of evidence settled by the decisions of the Supreme Court of Alabama for more than a hundred years is that it is not permissible for a witness to testify to his undisclosed intention in respect to matters at issue; that such intention must be inferred by the triers of fact from the witness's conduct and circumstances attending the occurrence. The basis of the rule is that the adverse party is left without any means of rebutting or controverting such affirmative testimony in respect to such undisclosed intention. The contrary rule is an open inducement to perjury and corruption on the trial of cases in courts of justice. The particular facts in the case at bar illustrate the soundness of the rule established by our decisions.